MARTIN et al. v. TOWN OF STATESBORO.

1. A power conferred upon a municipal corporation by its charter which authorizes it "to levy and collect such special tax on trades, businesses, occupations, theatrical exhibitions, or other performances exercised, performed or carried on within the corporate limits of said town, including circuses and shows of all kinds, itinerant traders, peddlers, auctioneers, and other games or trades or occupations subject to special tax under the State law, as they may deem proper," is well exercised by the exaction of a license fee for engaging in any occupation or business which may fall within the special descriptive terms of the power, and may likewise be exercised by the levy of a special license fee upon such other occupations, games, etc., as are made subject to a special tax by the general statute law of the State.

2. Inasmuch as the municipal corporation, the only person whose interest is adversely affected, did not except to the order of the chancellor granting the injunction in favor of the class of persons designated in the order made by him, no error alleged to have been committed in so ruling can be considered upon the present writ of error.

Submitted January 21,—Decided March 8, 1897.

Petition for injunction. Before Judge Gamble. Bulloch county. August 13, 1896.

Cason & Everitt, for plaintiffs.

Brannen & Moore, for defendant.

ATKINSON, Justice.

The municipal authorities of the town of Statesboro passed an ordinance, which was entitled, "An ordinance to require license for certain businesses and occupations; to assess a special tax on same." It provided, that from and after the 1st of July, 1896, and annually thereafter, each and every person engaged or who shall engage in any trade, occupation or business, which was thereinafter enumerated, within the corporate limits of the town of Statesboro, shall pay a special tax as thereinafter provided, that is to say: 1. Every merchant, storekeeper, or banker, the sum of five

dollars, and five dollars additional for each clerk employed in said store. That is to say, five dollars for each man employed in same up to three—the amount in no case to exceed the sum of fifteen dollars for any one place.  2. Each and every person running a hotel and soliciting transient boarders, the sum of five dollars.  3. Each and every person engaged in running a livery business, keeping horses and mules for hire, the sum of fifty dollars.  4. Each and every drover or dealer in horses or mules, or horses and mules, the sum of twenty-five dollars.  5. Each and every person running a barber shop, the sum of five dollars for each chair used in said shop.  6. Each and every person running a printing office, the sum of five dollars.  7. Each and every person engaged in writing fire insurance, or life and fire insurance, the sum of five dollars.  8. Each person acting as agent for the sale of guano or other fertilizer, the sum of five dollars.  9. Each and every person engaged in running bottling works, the sum of five dollars.  10. Each and every person engaged in shoe and harness making or mending, the sum of five dollars.  11. Each and every person engaged in running a machine, cabinet or repair shop, or planing mill, the sum of five dollars.  12. Each and every person engaged in running a restaurant, the sum of five dollars.  13. Each and every person engaged in running a photograph or artist's gallery, five dollars.  14. Each and every person engaged in running a jewelry, or jewelry repair store, five dollars.

Certain persons who were citizens of the town of Statesboro and doing business therein, some of them engaged in the mercantile business, some in running repair and machine shops, some in running hotels, some in running printing offices, some in running a livery business, harness making, fire insurance, and some in running shoe shops, filed a petition to enjoin the mayor and council from enforcing the license ordinance in question. It was alleged that one of the petitioners operated a livery business using only two horses,

while others in the same line of business used five and nine horses; that some of the petitioners were doing a small mercantile business of a few hundred dollars annually, while other merchants in the town each did many thousands of dollars worth of business; that some of the petitioners did a small repair and shop work business with their individual hand-power, while others did a large business using much steam-power. It was alleged that the town had no authority under its charter to collect any special tax at all from them on account of their engagement in their several occupations. It was alleged, that even if the town had such authority, it could not collect it as the ordinance provided, because the levy was not uniform as contemplated by the law, and that the tax should be upon and according to the amount of business done by each person; that the collection of the tax was unnecessary; that the only extraordinary expense connected with the running of the city government was the payment of a night watchman, and that there were ample funds on hand to defray that expense. At the hearing, affidavits were introduced in support of these allegations; and for the purposes of this case, they may be taken as proven. The answer of the defendant denied that the assessment of a special tax was illegal, that it was wanting in uniformity; and denied that there was no necessity for the levy of the special tax, because, as alleged in the answer, the money realized from the levy of this special tax was not only for the purpose of employing a night watchman, but to enable the town to engage the services of a regular scavenger, and a horse and wagon; and alleged in addition, that without the levy of the special tax provided for, the town would have to borrow money with which to meet these items of expense.

The charter of the town whence the power to pass the ordinance claims to have been derived is to be found in the Acts of 1889, p. 799. The provision upon that subject is this: "They [the municipal authorities] shall have full power and authority to levy and collect such special tax on

trades, businesses, occupations, theatrical exhibitions, or other performances exercised, performed or carried on within the corporate limits of said town, including circuses and shows of all kinds, itinerant traders, peddlers, auctioneers, and other games or trades or occupations subject to special tax under the State law, as they may deem proper."

His Honor, the Circuit Judge, at the hearing, made the following order: "After hearing argument on the within petition, I am of the opinion that the town of Statesboro, under its charter, has the power to tax occupations, trades and businesses carried on within the town, and the ordinance of which complaint is made is not void and contrary to law. So much of said ordinance, however, as undertakes to tax merchants, and to grade and to regulate the amount of their taxes by the number of clerks they employ, is an improper and illegal method of taxation. They should be taxed (if the purpose is to tax their business) by the amount of business each does; and this should be ascertained by their sales, and not by the number of clerks they employ. So far as the ordinance affects those classes sought to be taxed by the number of clerks they employ, the same is inoperative and void. The injunction is refused as to all persons not affected by the inoperative parts of the ordinance, and ordered to issue as to those affected." To this judgment the plaintiffs excepted. No exceptions by cross-bill were taken by the municipal authorities to any part of the judgment which might have operated contrary to the interests of the town.

1. The complaint that the levy of this special tax is unauthorized, because the money to be realized therefrom is not necessary to defray the current expenses of the town, seems, if we may quote the language of Mr. Justice Bleckley, "to ignore the mayor and council as agents of thought, and treat them as agents of work only." Just how much money is necessary to be raised in order to meet the current expenses of a town is a matter concerning which the mayor

and council, are necessarily better informed than the courts could possibly be; and so long as they proceed within the charter power and exercise a discretion as to when the exigencies of the public service require the exercise of such power, the courts cannot interfere (see *Hawkins* v. *Intendant*, 63 *Ga.* 527); and if abuses creep in, the corrective must be applied at the ballot-box. The levy of a license-tax, if so unreasonable in amount as to be wholly disproportioned to the proper regulation of trades or occupations, by municipal corporations in the exercise of police power touching such subjects, may, under some circumstances, be subject to judicial control, but to justify judicial interference, the sums exacted would have to be far in excess of the very moderate occupation taxes levied in the present instance.

It was argued with earnestness in the brief of plaintiffs in error, that the words "occupations subject to special tax under the State law," as employed in the charter, limited the power of the mayor and council to the levy of a special tax upon such occupations only as were subject to special tax under the State law. The construction thus sought to be placed upon this provision of the charter is not justified by the language employed by the General Assembly. It will be seen that the municipal authorities had the power to levy and collect special taxes on trades, businesses, occupations, theatrical exhibitions, or other performances exercised, performed or carried on within the corporate limits of said town, including circuses and shows of all kinds, itinerant traders, peddlers, and auctioneers generally. There being a number of games, trades and occupations which might be subject to a special tax under the State law, but which would not be comprehended within the meaning of either of the special terms above employed, the General Assembly, in this grant of power, extended the authority of the mayor and council to such other games, trades or occupations as were subject to a special tax under the State law, and while

this provision might have been framed with greater regard to absolute verbal accuracy, it is manifest that the General Assembly, in using the words "subject to tax under the State law," did not mean to limit the power of the mayor and council to the levy of a special tax upon such businesses, occupations, trades, etc., only as might be subject to tax under the State law, but intended to authorize the levy of taxes upon such occupations as might fall within the meaning of the special terms employed, and then to extend the power to levy a special tax upon such other games, trades or occupations as might be subject to a special tax. If a business, game or trade did not fall within either of the general terms employed in the act, and were not subject to a special tax under the State law, then the mayor and council would not be authorized to require a license for the exercise of such an occupation, or engagement in such a business, trade or game.

2. In so far as the uniformity of the several license taxes exacted by this ordinance is concerned, we do not think that the complaint of those petitioners against whom the judge denied an injunction is well founded. Upon each of the several classes of occupations to which the ordinance in question related, the special tax levied was uniform in the sense that no person engaging in one of them was required to pay a greater sum for his license than another person engaging in a like occupation of the same class; and this is the test of uniformity. It will be seen that he enjoined the collection of the tax as to certain merchants who fell within a given class. No exception was taken by the mayor and council to this ruling. The plaintiffs who prosecute the writ of error here have no right to complain of the judgment upon that ground; and hence, inasmuch as that branch of the decision is not here upon the complaint of any person against whom it operates and who could except to its terms, we have no authority to inquire into and adjudicate upon its correctness in that respect.

*Judgment affirmed. All the Justices concurring.*