## 31788. HEALTH FACILITY INVESTMENTS, INC. et al. v. GEORGIA DEPARTMENT OF HUMAN RESOURCES et al.

INGRAM, Justice.

Appellant, operator of the Ansley Pavilion Nursing Home, sued the Department of Human Resources (DHR) and various officials connected with that department of state government. Appellant had contracted with DHR on October 1, 1974, as a provider of skilled nursing facility services to state medical assistance (medicaid) patients.[1] On December 1, 1974, the Board of Human Resources promulgated a maximum reimbursement ceiling limiting to $550 per patient per month the amount which the state would expend in medicaid payments to skilled nursing home facility services. Code Ann. § 99-2905 (Ga. L. 1965, pp. 385, 388).

Appellant continued to provide nursing home services to state medicaid patients under the provider agreement entered into on October 1, 1974, even though that agreement gave either party the right to unilaterally terminate the agreement upon 30 days notice to the other party. It also provided that the reimbursement rate was subject to adjustments by appellee. Appellant entered into a second provider agreement with the state on August 26, 1975. That agreement expressly authorized appellee to make downward adjustments in the reimbursement rate. Cf. *Austin v. Benefield,* 140 Ga. App. 96 (230 SE2d 16) (1976).

Then, on April 17, 1976, appellant instituted the present suit in the Fulton Superior Court. Appellant

---

[1] Georgia's Medicaid Program, Ch. 99-29 — Georgia Public Assistance Act of 1965 (Ga. L. 1965, p. 385 et seq., as amended, Ga. L. 1967, p. 878 et seq.) was enacted pursuant to Title XIX of the Social Security Act of 1935, as amended, codified as 42 USCA, § 1936 et seq., and implementing regulations of the Department of Health, Education and Welfare. DHR is the single state agency designated pursuant to the Medicaid Act to run the Medicaid program in Georgia. Code Ann. § 99-2903 (a) (7).

argued that the promulgation and implementation of the maximum reimbursement ceilings violated a plethora of federal and state constitutional provisions, the now defunct Medical Assistance for the Aged Act[2] and the Magna Carta. Appellant sought a declaratory judgment that the ceilings were unconstitutional, that appellee be enjoined from continuing to implement them, and that appellant be awarded approximately $110,000 in damages. The exact damage figure was derived by substracting the amount which appellant had billed the state from the amount which it had been paid by reason of the maximum reimbursement ceilings.

Appellant amended his complaint to allege that the action of the board in adopting the maximum reimbursement ceilings was void in that several members of the board were serving in that capacity under conflicts of interest. Even assuming for the purposes of argument that such conflicts of interest did exist, that fact would be of no avail to appellant in this proceeding. It is well settled in Georgia that, ". . . although a person may be absolutely ineligible to hold any civil office whatever in this state, yet his official acts, while holding a commission as a public officer, are valid as the acts of an officer de facto." *Wright v. State,* 124 Ga. 84, 85 (52 SE 146) (1905). See, also, *Varnadoe v. Housing Authority of Doerun,* 221 Ga. 467, 471 (145 SE2d 493) (1965); *Zorn v. Walker,* 206 Ga. 181 (56 SE2d 511) (1949). This was the ruling of the trial court on this issue, and we agree with it.

The trial court also ruled that appellant's constitutional and statutory attacks upon the maximum reimbursement ceilings were without merit,[3] and, furthermore, that the suit was barred by the doctrine of sovereign immunity.[4] We agree with both of those

---

[2] Ga. L. 1961, pp. 170 et seq. (Code Ann. Ch. 99-25).

[3] Cf. Briarcliff Haven, Inc. v. DHR, 403 FSupp. 1355 (N. D. Ga. 1975), holding that implementation of the maximum reimbursement ceilings by DHR did not violate any of the statutory provisions of the Federal Medicaid Act.

[4] Appellant's arguments that the State Court of

conclusions by the trial court and affirm the grant of appellees' motions for summary judgment.

The trial court found that, ". . . the entire complaint is barred by the doctrine of sovereign immunity inasmuch as no exception to this jurisdictional bar has been presented to the court, and all relief sought would flow from an entity of the State of Georgia. See *Revels v. Tift County,* 235 Ga. 333 (219 SE2d 445) (1975); *Azizi v. Board of Regents,* 233 Ga. 487 (212 SE2d 627) (1975); *Duffee v. Jones,* 208 Ga. 639, 645-46 (1951)." See also *Koehler v. Massell,* 229 Ga. 359 (191 SE2d 830) (1972); *Crowder v. Dept. of State Parks,* 228 Ga. 436 (185 SE2d 908) (1971); *Roberts v. Barwick,* 187 Ga. 691 (1 SE2d 713) (1944); *Eibel v. Forrester,* 194 Ga. 439 (22 SE2d 96) (1942); *Western Union Tel. Co. v. Western & A. R. Co.,* 142 Ga. 532 (83 SE 135) (1914); *Peeples v. Byrd,* 98 Ga. 688 (25 SE 677) (1896); *Ga. Military Institute v. Simpson,* 31 Ga. 273, 277 (1860).

Admittedly, this disposition of the case works a harsh result and we would prefer to treat the merits of the litigation. However, until the legislature provides some means for appellant to enforce its claim against the DHR, we have no choice except to apply the doctrine of sovereign immunity to this case. The state has not consented for the DHR to be sued, and sovereign immunity has now achieved constitutional status in Georgia. *Azizi v. Board of Regents,* supra, p. 488. As was said 117 years ago by this court in *Ga. Military Institute v. Simpson,* supra, p. 277, "[w]e have no Court of Claims in this state, nor petition of right, as in England. But whoever contracts with the state trusts to the good faith of the state, unless the state sees fit to disrobe itself of its sovereignty, . . ."

*Judgment affirmed. All the Justices concur, except Nichols, C. J., and Hill, J., who concur specially.*

---

Claims Amendment (Ga. L. 1973, pp. 1489, 1490), is invalid due to procedural irregularities, and that the Georgia Administrative Procedure Act (Ga. L. 1964, pp. 338 et seq., as amended) provides for a waiver of sovereign immunity, are not addressed because they were not raised at trial.

Submitted December 17, 1976 — Decided February 9, 1977 — Rehearing denied February 22, 1977.

*Thomas H. Antonion,* for appellants.

*Arthur K. Bolton, Attorney General, Stephen L. Cotter, Assistant Attorney General,* for appellees.

*Aaron Baranan,* amicus curiae.