Michael J. PAVLIK, Jennie L. Pavlik, John Pavlik, Andrew Pavlik, Rudy Pavlik, Paul Pavlik, Steve Younger, Genevieve Younger, Homer Ogle, Neva Ogle, George Ogle, and Anna Johnson, Appellants,

v.

STATE of Alaska, DEPARTMENT OF COMMUNITY AND REGIONAL AFFAIRS, Local Boundary Commission, and the City of Yakutat, a municipal corporation, Appellees.

The CITY OF YAKUTAT,
Cross-Appellant,

v.

Michael J. PAVLIK, Jennie L. Pavlik, John Pavlik, Andrew Pavlik, Rudy Pavlik, Paul Pavlik, Steve Younger, Genevieve Younger, Homer Ogle, Neva Ogle, George Ogle, and Anna Johnson, Cross-Appellees.

Nos. 4961, 4979.

Supreme Court of Alaska.

Dec. 18, 1981.

James F. Petersen, Juneau, for appellants/cross-appellees.

Rodger W. Pegues, Asst. Atty. Gen. and Avrum M. Gross, Atty. Gen., Juneau, for appellee State of Alaska.

Patrick M. Anderson, Hedland, Fleischer & Friedman, Anchorage, for appellee/cross-appellant City of Yakutat.

Before RABINOWITZ, C. J., CONNOR, BURKE, and MATTHEWS, JJ., and DIMOND, Senior Justice.*

OPINION

CONNOR, Justice.

This appeal arises from an action challenging the annexation of land to the City of Yakutat. The superior court entered summary judgment for the defendants on the basis of laches and equitable estoppel. We affirm.

* Dimond, Senior Justice, sitting by assignment made pursuant to article IV, section 16 of the Constitution of Alaska.

1. The annexation was initiated by state action, pursuant to article X, section 12, of the Alaska Constitution and AS 44.19.260, rather than by local action. The governing regulations, therefore, are those set forth in 19 AAC 10.010–.180.

2. 19 AAC 10.090, which requires notice and a hearing, provides:

"The commission shall determine the time and place of the hearing which shall be held in or near the territory. At least fifteen days prior to the date of the hearing, the commissioner shall cause notice of the hearing to be given and served by certified mail upon:
    (1) all municipalities specified at sec. 60 of this chapter; and
    (2) any person or municipality who has filed an answering brief pursuant to sec. 100 of this chapter."
See 19 AAC 10.130.

Although the regulations call for a hearing, it is of interest that the regulations also provide for a self-executing waiver of procedural defects:

"Compliance with the regulations of this chapter may be waived by the commission if substantial rights of interested parties are not prejudiced by such waiver. Any deviation from the procedures set forth in this chapter is waived by the commission unless the commission or a party objects."
19 AAC 10.150.

3. The owners of the property being considered for annexation under the original petition were alerted to the proceedings by the notice given

On October 8, 1973, the City of Yakutat petitioned the Local Boundary Commission to annex certain adjacent land.[1] On May 23, 1975, the commission held a properly noticed hearing[2] on the petition. The area in which the twelve appellants live was not originally part of the land considered for annexation. These landowners and residents, therefore, did not attend the hearing.[3] At the hearing it was proposed for the first time that the annexation petition be amended to include a larger area of land, which in part included appellants' property. The commission could have discontinued its proceedings at that time and notified the owners and residents of the additional area, which would include appellants, of the proposed annexation of their land, so that a new hearing could have been held, at which the owners and residents could have expressed their views on the annexation.[4] In-

of the petition. 19 AAC 10.080, which requires this notice, states in relevant part:

"Upon receipt of notice from the department that the petition and brief have been accepted, the petitioner shall cause notice of the filing of the petition to be published in a newspaper of general circulation in the territory. Such notice shall be in the form specified by the Commissioner of the Department of Community and Regional Affairs and shall include a brief explanation of the proposed boundary change, the name of the petitioner, the name of each municipality whose boundaries are to be changed, and shall indicate the place where the petition and brief may be inspected by the public as provided in sec. 60 of this chapter."
Yakutat does not have its own newspaper and notices of the petition were therefore posted in several prominent places in the city. Appellants knew of the posted notices, but because the original petition did not involve their property, they had no reason to be concerned about the annexation proceedings or attend the commisson's hearing.

4. The regulations do not provide for the amendment of a petition for annexation and the proper procedures, therefore, are not entirely clear. It seems evident, however, that the commission should have held a new hearing after the proposed amendment because the purpose of the notice and hearing requirement of 19 AAC 10.090 is to permit interested persons to express their views on the annexation. 19 AAC 10.130(d) states that at the hearing "the commission will hear the views of all or any interested persons or political subdivision . . . ." The

stead, the commission reconvened for a decisional meeting shortly after the hearing, and approved the annexation as amended. A formal decision to this effect was entered on January 12, 1976. The commission's recommendation for the annexation was presented to the Alaska legislature on January 19, 1976. No resolution of disapproval was introduced in the legislature and, therefore, the annexation became effective on March 4, 1976.[5]

On November 3, 1978, two years and eight months after the annexation became effective, appellants filed suit against the State of Alaska, the Local Boundary Commission, and the City of Yakutat. They claimed that the commission's failure to provide them with notice and a hearing on the annexation of their land to the City of Yakutat violated the due process clauses of the Alaska and United States Constitutions, as well as certain state laws and regulations. Appellants requested the superior court to set aside the annexation of all lands beyond those indicated in the commission's original petition.[6]

All parties moved for summary judgment. The superior court granted appellees' motion, invoking the doctrines of laches and equitable estoppel to bar the appellants' action. The parties were ordered to bear their own costs and attorney's fees. The landowners and residents appeal and, in addition, argue that their own motion for summary judgment should have been granted. The City of Yakutat cross-appeals from the denial of its request for attorney's fees.

## I

We first consider whether the superior court erred in granting summary judgment for the commission, state and city on the basis of laches. The facts are not in dispute and thus we need only examine whether appellees were entitled to judgment as a matter of law. *See* Alaska R.Civ.P. 56. We will not overturn a trial court's decision that an action is barred by laches unless we have a firm and definite conviction that a mistake has been committed. *Young v. Williams*, 583 P.2d 201, 204 (Alaska 1978). As stated in *Moore v. State*, 553 P.2d 8, 15 (Alaska 1976):

"The decision to sustain a defense based on laches is properly addressed to the discretion of the trial court, and will not be overturned unless we feel a definite and firm conviction that a mistake has been committed."

This is the same test used to determine whether a trial judge's findings are "clearly erroneous." *Id.* at 15, n.3.

A laches analysis requires the trial court to make two determinations in deciding the effect of a delay in bringing suit. The court must find both an unreasonable delay in seeking relief and a resulting prejudice to the defendant as a result of the delay. *Concerned Citizens of South Kenai Peninsula v. Kenai Peninsula Borough*, 527 P.2d 447, 457 (Alaska 1974). Consequently, whether laches exists is determined in part by balancing the length of a plaintiff's delay in bringing suit against the severity of the prejudice resulting to the defendant. As we stated in *Concerned Citizens*:

"No specific time must elapse before the defense of laches can be raised because the propriety of refusing to hear a claim turns as much upon the gravity of

commission cannot do this if the owners and residents of affected land are not notified of the hearing.

5. Using identical language, both the Alaska Constitution, article X, section 12, and AS 29.-68.010 provide that a proposed boundary change "shall become effective forty-five days after presentation or at the end of the session, whichever is earlier, unless disapproved by a resolution concurred in by a majority of the members of each house."

6. After this lawsuit was filed the commission moved, in January, 1979, to reconsider the city's boundaries. It reheard the matter and gave appellants the opportunity to be heard. The commission thereafter reaffirmed its earlier decision to annex that area encompassing appellants' land. Because we dispose of this appeal based on laches, it is unnecessary to resolve whether this second hearing cured the initial procedural defect surrounding the original hearing.

the prejudice suffered by the defendant as the length of the plaintiff's delay." *Id.* at 457. Thus, where there is a long delay, a lesser degree of prejudice will be required.[7]

In this case, the landowners were alerted that their property had been annexed shortly after March, 1976, the effective date of the annexation. They realized at that time that they had not been notified of any hearing concerning annexation of their property. Yet the landowners did not file their complaint until November of 1978, fully two years and eight months after they knew of the annexation. We agree with the superior court that this delay was unreasonable.[8]

Although the question of prejudice to the appellees presents a somewhat close question standing alone, when viewed in light of the appellants' extensive delay in filing this action, we are of the opinion that the prejudice is adequate to support the trial court's application of laches. The trial court relied upon several factors in concluding that appellants' delay resulted in prejudice. First, it found that some of the appellants had voted in city elections, which they were entitled to do only because they were residents of the city following the annexation. The court believed that setting aside the annexation could affect these elections, a conclusion about which we express no opinion. Second, one of the appellants had become a member of the city's planning and zoning commission, again a position that could only be held by a resident of the city. The trial court concluded that if the annexation were set aside, this party's vote would have to be discounted on all matters heard by the commission while a member, and

that this might affect some of the commission's decisions, again a conclusion about which we express no opinion. Third, the court concluded that setting aside the annexation would require the city to refund the taxes it had assessed and collected on the annexed property. Finally, the court found that, while "no great extent of services" were provided, police and fire protection had been available since the annexation. These prejudicial effects of the delay are in line with those we mentioned in *Concerned Citizens* and in *Port Valdez Co. v. City of Valdez*, 522 P.2d 1147, 1153 (Alaska 1974).

■ Laches is essentially a matter of "balancing the equities of a particular case to determine whether plaintiffs are guilty of inequitable delay." *Moore v. State*, 553 P.2d 8, 19 (Alaska 1976). In striking that balance in the case at bar, we think significant weight should be accorded appellants' acquiescence in the annexation of that area in which they reside. Appellants voted in city elections; they paid property taxes; they requested and received favorable zoning; one of the appellants became a member of the planning and zoning commission; another sent a child to school in the city without paying the tuition required of nonresidents. Given the fact that the city suffered some prejudice and that of appellants' acquiescence, we cannot arrive at a "definite and firm conviction that a mistake has been committed" by the superior court in balancing the equities. *See Young*, 583 P.2d at 204; *Concerned Citizens*, 527 P.2d at 457.

■ Thus we affirm the superior court's conclusion that laches precludes appellants from asserting their claim.[9] In view of this

---

7. We have alluded to this interdependence between the elements of delay and prejudice in numerous prior opinions. *See Wolff v. Arctic Bowl, Inc.*, 560 P.2d 758, 767 (Alaska 1977); *Moore v. State*, 553 P.2d 8, 15–16 (Alaska 1976); *Concerned Citizens of South Kenai Peninsula v. Kenai Peninsula Borough*, 527 P.2d 447, 457 (Alaska 1974).

8. It is interesting to note that AS 29.18.150 sets a six-month statute of limitations on private

actions pursuing the analogous issue of challenging a municipality's incorporation.

9. We reject appellants' argument that the trial court erred in not considering the public interest assertedly imbuing their position. *See Moore v. State*, 553 P.2d 8 (Alaska 1976). Appellants argue that the public interest in their action is important enough that, when balanced with the other factors considered by the trial court, it would tip the scales in their favor. We disagree. The interest they claim their action

disposition, we need not reach the other arguments advanced on appeal.[10]

## II

On cross-appeal the City of Yakutat argues that the superior court abused its discretion by failing to award the city its attorney's fees. Civil Rule 82(a)(1) provides that absent a monetary recovery, "attorney's fees for the prevailing party may be fixed by the court as a part of the costs of the action, in its discretion, in a reasonable amount." We will not reverse the superior court's decision unless it is manifestly unreasonable. *Tobeluk v. Lind*, 589 P.2d 873, 878 (Alaska 1979); *Palfy v. Rice*, 473 P.2d 606, 613 (Alaska 1970).

The superior court denied the city's request for attorney's fees on the ground that "the situation that these plaintiffs were put to by the lack of notice was enough to suggest that the public generally ought to bear the burden of their attempt to contest it." We do not believe this reasoning is manifestly unreasonable. Therefore, we affirm the court's decision.

The judgment is AFFIRMED.

involves is the interest the public has in the vindication of a constitutional right, which in this case is the asserted right to notice and hearing before one's property is annexed. The trial court concluded that there is no constitutional right to notice and a hearing in annexation proceedings. Even assuming that there is such a right, a question we do not reach, in the present annexation context the appellants are not asserting any interest of the public at large. In challenging the annexation, the appellants are merely asserting their private interests as owners of private property. Not every suit against the government is infused with a public interest, and characterizing their attack as constitutional does not change that principle. Even if the suit did involve a public interest advanced by the appellants, it would not compel an exception to the bar of laches. A public interest, if it exists, is but one factor to balance among the overall equities in deciding the laches issue.

**10.** Appellants argue that the government should never be permitted to invoke laches to bar an action that protects the public interest, relying upon *George v. Arizona Corp. Comm'n*, 83 Ariz. 387, 322 P.2d 369, 372 (1958). Appellants, however, misconstrue *George.* The rule

DIMOND, Senior Justice, joined by MATTHEWS, Justice, dissenting.

I agree with the majority's holding that the appellants' delay in bringing this action—two years and eight months after they knew of the annexation—was unreasonable. But I disagree with the holding that the prejudice to the City of Yakutat is adequate to support the superior court's application of laches so as to bar the relief appellants seek.

The superior court found that some of the appellants voted in city elections, which they were entitled to do only because they were residents of the city after the annexation. The court believed that setting aside the annexation could affect those elections. I believe that here the superior court was mistaken. Yakutat City Ordinance 4.36.020 provides that if an election is not challenged within ten days of when the results are declared the election results "shall be conclusive, final and valid in all respects."[1] By its own ordinance, therefore, Yakutat's elections cannot be affected if a contest is not initiated within approximately ten days of the election. There is no means by which the appellants' votes in past elections could now be set aside.

adopted there is that when the state brings an action that involves its governmental functions, the defendant cannot invoke laches to bar the action. This is nearly the opposite of the principle suggested and provides no authority for appellants' argument. Further, we rejected their argument in *Moore*, where we stated that "we cannot agree ... that laches should never be applied when the 'public interest' is at stake." 553 P.2d at 19.

**1.** This ordinance is similar to AS 29.28.050(e), which governs when a municipality does not enact its own ordinance on the subject. AS 29.28.050(e) provides, in part, as follows:

No person may appeal or seek judicial review of a city or borough election for any cause or reason unless the person ... has commenced, within 10 days after the assembly or council has finally declared the election results, an action in the superior court in the judicial district in which the municipality is located. If no such action is commenced within the 10-day period, the election and election results shall be conclusive, final and valid in all respects.

The superior court found that one of the appellants had become a member of the city's Planning and Zoning Commission, which was a position that could only be held by a resident of the city. The court concluded that if the annexation were set aside this appellant's vote would have to be discounted on all matters heard by the Commission while she was a member, and that this would probably affect some of the Commission's decisions. This, the court found, would be another item of prejudice to the city that would call for the application of laches so as to bar the relief sought by appellants.

I believe that the superior court was mistaken in reaching this conclusion. If the annexation were set aside, the appellant who sat on the Commission would retrospectively lose her status as a resident of the City of Yakutat, and thus would be retrospectively disqualified to have been a member of the Commission. But the doctrine of "de facto officer" would prevent this from having any effect on the decisions made by the Commission while this appellant was a member.

This doctrine provides that a person who is ineligible to hold a governmental office but assumes the office under color of law is a de facto officer whose official acts cannot be challenged on the basis of the disqualification. As one court stated:

A person who assumes and performs the duties of a public office under color of authority and is recognized and accepted as the rightful holder of the office by all who deal with him is a de facto officer, even though there may be defects in the manner of his appointment, or he was not eligible for the office, or he failed to conform to some condition precedent to assuming the office.

State v. Miller, 222 Kan. 405, 565 P.2d 228, 235 (1977), quoting Olathe Hospital Foundation, Inc. v. Extendicare, Inc., 217 Kan. 546, 539 P.2d 1 (1975).

The Georgia Supreme Court explained the doctrine, stating:

Although a person may be absolutely ineligible to hold any civil office whatever in this state, yet his official acts, while holding a commission as a public officer, are valid as the acts of an officer de facto.

Health Facility Investments, Inc. v. Georgia Department of Human Resources, 238 Ga. 383, 233 S.E.2d 351 (1977), quoting Wright v. State, 124 Ga. 84, 52 S.E. 146 (1905).

In this case, the appellant who sat on the Commission took office under color of law. Everyone involved believed that she was eligible to sit on the Commission and everyone acted as though she were a proper member. I believe that, under these facts, if the annexation were set aside the appellant would be a de facto officer. Setting aside the annexation would not affect the validity of the Commission's decisions.

As another reason for applying the doctrine of laches, the superior court found that, while "no great extent of services" was provided, police and fire protection had been available since the annexation.

The mere fact that municipal services, such as police and fire protection, have been available to the appellants since the annexation of their land does not constitute the type of prejudice necessary to support a finding of laches. The typical prejudice resulting to a city from a belated attack upon an annexation is that the city has already extended substantial services to the annexed area, such as making street improvements, supplying water and electricity, and installing sewer systems, sidewalks and curbing. See Alexander v. Trustees of Village of Middleton, 92 Idaho 823, 452 P.2d 50, 52–54 (1969); Finucane v. Village of Hayden, 86 Idaho 199, 384 P.2d 236, 240 (1963). No services of this nature were provided to the area in which appellants live.

Finally, the superior court applied the doctrine of laches because to set aside the annexation would require the City of Yakutat to refund taxes that it had assessed and collected on the annexed property.[2] A mu-

2. The superior court and all parties have as-

sumed that if the annexation is set aside Yaku-

nicipality undoubtedly sustains some harm whenever it is required to unexpectedly refund taxes that it has collected. In some circumstances, when a plaintiff unreasonably delays before challenging an annexation, the prejudice that this causes the municipality will be sufficient to justify invoking laches to bar maintenance of the action. Depending upon the size of the area annexed and the tax rate involved, the money collected in property taxes from the area could be substantial. The longer the owners of the area wait before challenging the annexation, the more money the municipality has collected and believes is available for its use. Refunding this money could seriously affect the municipality's financial position. However, in other circumstances, relatively little money could be involved, so that refunding the taxes would not cause any significant harm to the municipality.

The record does not show the amount of taxes involved. In order to ascertain whether the City of Yakutat would suffer such prejudice as to invoke the doctrine of laches against appellants if the city were obliged to refund taxes, a determination would have to be made of the amount of taxes paid by appellants and other owners of the annexed property. I would remand the case for such a determination by the superior court. Then, and only then, can it be decided whether Yakutat would be significantly prejudiced if it had to refund this money to the owners of the annexed property. In the absence of such a finding by the trial court on remand, I believe that the majority is mistaken in holding that laches preclude appellants from asserting their claim.

tat will have to refund the property taxes it collected from the area. We accept this assumption for the purpose of discussion, but express no opinion as to its validity.