Bernd VOCKNER, Appellant,

v.

Leo ERICKSON, Appellee.

No. S–421.

Supreme Court of Alaska.

Jan. 10, 1986.

Reginald J. Christie, Jr., David Gorman, Charlene A. Lichtman, Kay, Christie, Saville & Coffey, Anchorage, for appellant.

David Shimek, Shimek & Peabody, Anchorage, for appellee.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

RABINOWITZ, Chief Justice.

This appeal arises from the superior court's ruling that the contract between Bernd Vockner and Leo Erickson, concerning the purchase of Erickson's apartment house, was unconscionable.

## I. FACTS.

In the spring of 1975, Erickson, then seventy-three years of age, ran an advertisement offering a twelve-person boarding house for sale. Bernd Vockner, a real estate agent, answered the advertisement and arranged to meet with Erickson. When Vockner arrived at the boarding house on the evening of April 30, 1975, Erickson informed him that the boarding house was not for sale, but that she desired

to sell her twelve-unit apartment house located on East 13th Avenue in Anchorage.

After discussing the possible purchase of the apartment house, Vockner took Erickson with him to inspect the building. Upon returning to the boarding house, Vockner prepared an earnest money agreement with forms he had brought with him, detailing the terms of the sale.

Although Erickson initially asked for $265,000, they settled on a sale price of $250,000. Vockner agreed to assume Erickson's existing deed of trust to the Small Business Administration for approximately $90,000, and to make a down payment of $10,000. Additionally, Vockner promised to execute a second deed of trust in favor of Erickson for $153,365.46 with 8½ interest, payable at the rate of $500 per month commencing on August 13, 1976. The earnest money agreement also provided for a balloon payment in the amount of $15,000 on August 13, 1976. The parties signed the earnest money agreement that evening, and Vockner delivered to Erickson an earnest money check for $1,000.

Subsequently, Erickson became dissatisfied with the agreement for two reasons: another purchaser had offered her $265,000, and she realized that the $500 a month payment would not even cover the interest as it accrued on the note. She expressed her dissatisfaction with the purchase price in a letter to Vockner on May 23, 1975, and returned the $1,000 earnest money. Vockner responded, informing Erickson that he expected performance. Erickson continued to resist complying with the earnest money agreement. Consequently, Vockner filed a complaint for specific performance and in the alternative for damages. Erickson believed that she had to comply because an attorney had informally advised her that Vockner would win and because of her husband's ill health, so she filed a pro per answer stating that she was ready to perform the earnest money agreement.

The earnest money agreement was then forwarded to Alaska Title Guarantee for preparation of the closing documents. Paul Nangle, the attorney retained to prepare the closing documents, discovered that the earnest money agreement did not contain a payoff date. Nangle called Vockner's attorney, who suggested that Nangel insert a thirty-year term. The superior court found that Erickson was never asked whether she agreed to the thirty-year term.

Vockner and Erickson then proceeded to close the sale. The promissory note provided in part for a thirty-year term with a $311,000 balloon payment at the end. The closing agent specifically remembered explaining all of the terms of the contract to Erickson. Four-and-a-half years later, Erickson filed a pro per complaint seeking reformation and payment of accrued interest, or return of the property. This complaint, later amended, also named as a defendant the then owner of the apartment house, as Vockner had sold the property within three or four months of purchase.

The case proceeded to trial with the thirty-year term as one of the primary issues. Vockner testified that he discussed the thirty-year term with Erickson before drawing up the agreement. Erickson testified that she did not know about the thirty-year term until she signed the documents at the closing. The superior court found that Erickson was never asked if she agreed to the term, but that she was informed about it before signing the closing papers.

The superior court held that Erickson was not under duress sufficient to invalidate the transaction. In so deciding, the court concluded that Erickson had viable alternatives to bowing under to any duress that the filing of the specific performance action might have generated.

The superior court rejected the contention that Vockner or his attorney had committed an intentional misrepresentation. In so holding, the court disagreed with the argument that there was an implicit false representation arising from the insertion of the thirty-year term into the closing documents. The court found that the closing agent apprised Erickson as to the existence of the thirty-year term and that Erickson was capable of reading the contract documents.

Overall, however, the superior court ruled that under the standards of § 208 of the Restatement (Second) of Contracts the contract was "clearly unconscionable." In so holding the superior court articulated the following reasons for its conclusion: Erickson is an elderly woman; it made no sense for someone her age to enter into a thirty-year agreement that would not even pay the interest as it accrued; the security for the loan would diminish as the building deteriorated over time; and elements of "quasi-coercion" constituted indicia of unconscionability. These elements included Vockner's filing of the specific performance and damages action, the fact that Vockner had counsel in that litigation and Erickson did not, and Vockner's greater experience in real estate matters.

Finally, the superior court held that laches did not bar Erickson's action. Erickson filed her case four-and-a-half years after selling the apartment building to Vockner. The court reasoned that if this were a legal cause of action rather than an equitable cause of action, the applicable statute of limitations would be six years. The superior court further concluded that the passage of the four-and-a-half years had not prejudiced Vockner in any manner.

Based upon the foregoing rulings the superior court reformed the parties' agreement and entered judgment against Vockner for the principal amount of $52,559.72, an amount sufficient to amortize the principal and interest from June 1975 to June 1983, and $126,894.54, with 8.5% interest, due in monthly installments of $1,075.36, an amount that would amortize the principal and interest over the term of the thirty-year note.

Lastly, the superior court ordered Vockner to execute a deed of trust in favor of

Erickson, encumbering other real property in an amount at least 10% greater than the total amount of judgment. In return for this second deed of trust, the court ordered Erickson to convey her interest in the deed of trust and promissory note of June 30, 1975 to Vockner.

## II. THE SUPERIOR COURT DID NOT ERR IN HOLDING THAT THE CONTRACT BETWEEN VOCKNER AND ERICKSON WAS UNCONSCIONABLE.[1]

In ruling that the contract was unconscionable, the superior court relied in part on § 208 of the Restatement (Second) of Contracts. Section 208 provides that:

> If a contract or term thereof is unconscionable at the time the contract is made a court may refuse to enforce the contract, or may enforce the remainder of the contract without the unconscionable term, or may so limit the application of any unconscionable term as to avoid any unconscionable result.[2]

The Restatement does not provide an explicit definition of unconscionability. It does identify factors, however, that support a finding of unconscionability. Additionally, it contains the following significant comment:

> Theoretically it is possible for a contract to be oppressive taken as a whole, even though there is no weakness in the bargaining process and no single term which is in itself unconscionable. Ordinarily, however, an unconscionable contract involves other factors as well as an overall imbalance.

*Id.* comment c at 108. Concerning these "other factors," in comment b the Restatement quotes § 2–302 of the UCC, comment

---

**1.** In her complaint and at trial, Erickson advanced theories of misrepresentation, duress, mistake, and unconscionability as grounds for invalidating the thirty-year term in the promissory note.

**2.** Restatement (Second) of Contracts § 208 at 107 (1981). Comment (a) indicates the scope of this provision:

> [T]he policy against unconscionable contracts or terms applies to a wide variety of types of conduct. The determination that a contract ... is or is not unconscionable is made in light of its setting, purpose, and effect. Relevant factors include weakness in the contracting process like those involved in more specific rules as to contractual capacity, fraud, and other invalidating causes. . . .
>
> *Id.* at 107.

1, which states: "[t]he principle is one of the prevention of oppression and unfair surprise and not of disturbance of allocation of risks because of superior bargaining power." (citation omitted.) [3]

█ As we indicated at the outset, the superior court articulated numerous factors relating to the parties' respective circumstances and to the terms of the agreement that led it to the conclusion that the contract was unconscionable. The court considered determinative that: Erickson is elderly and would be 103 years old when the large baloon payment was due; the balloon payment at the end of thirty years would have been $311,000; and the value of the security would decrease over the course of this thirty-year term.[4] In addition the superior court also considered several indicia of unconscionability, which it termed "quasi-coercion". These were that Vockner filed suit for specific performance and damages; that Vockner hired counsel while Erickson was unrepresented in that suit; and that Vockner had an advantage over Erickson due to his real es-

tate training. The superior court observed that, "They did not approach this transaction on an equal level of knowledge[;] [t]he cards were stacked in favor of Vockner with respect to making the particular bargain." [5]

Based upon our review of the record and in part for the reasons articulated by the superior court, we hold that the superior court's determination of unconscionability under section 208 of the Restatement (Second) of Contracts should be affirmed.[6] Additionally, we affirm because Vockner rather than Erickson retained the interest on the $6,000 annual interest that was due but not payable under the terms of the promissory note. Erickson should be the party earning interest on the interest. By depriving her of this interest, she would have lost approximately $600,000 over the thirty years, assuming 8% interest compounded monthly. Given the fact that $600,000 in thirty years is worth approximately $55,-000, the promissory note had an actual fair market value of only $98,000.[7] This fact,

---

**3.** In *Morrow v. New Moon Homes, Inc.*, 548 P.2d 279, 292 n. 43 (Alaska 1976) we said that "unconscionability":

> ... has generally been recognized to include an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party.

Section 208, comment c to the Restatement states, "Inadequacy of consideration does not of itself invalidate a bargain, but gross disparity in the values exchanged may be an important factor in a determination that a contract is unconscionable...." Restatement (Second) of Contracts § 208 comment c at 108 (1981).

Section 208, comment d to the Restatement states:

> A bargain is not unconscionable merely because the parties to it are unequal in bargaining position, nor even because the inequality results in an allocation of risks to the weaker party. But gross inequality of bargaining power, together with terms unreasonably favorable to the stronger party, may confirm indications that the transaction involved elements of deception or compulsion, or may show that the weaker party had no meaningful choice....

*Id.* § 208 comment d at 109.

**4.** In regard to the deteriorating security factor, the superior court further observed that it was "[c]ertainly a situation approaching that of near

insanity for anyone to enter into a deal like this."

**5.** *See Cambell Soup Co. v. Wentz*, 172 F.2d 80, 84 (3d Cir.1948) where the court held that although the contract in question was legal, the contract taken as a whole drove too harsh a bargain for a court of conscience to assist. One commentator, in discussing § 2–302 of the UCC stated that:

> Comment 1 goes to some lengths to establish a climate in which courts will feel emboldened to strike directly at contracts ... which appear too heavily weighted in favor of one of the parties; that is to act, in some measures at least, as a tribunal of constitutional review applying "bill-of-rights" prescriptions to the parties' private legislation.

M.P. Ellinghaus, *In Defense of Unconscionability*, 78 Yale L.J. 757, 773 (1969).

**6.** A determination of unconscionability is made as a matter of law. Restatement (Second) Contracts § 208 comment f at 111 (1981).

**7.** Erickson argues in part, on appeal, that were interest to accrue and be compounded annually, the balloon payment due in the year 2005 would be $568,498.

> Erickson further persuasively argues that:
>
> If the note is construed so as not to require compounding of interest—*i.e.*, payment of in-

in addition to those factors relied upon by the superior court, persuades us that the superior court's determination of unconscionability should be sustained.[8]

### III. THE SUPERIOR COURT'S REFORMATION OF THE CONTRACT.

As noted at the outset, the superior court reformed the contract to provide that Vockner was to pay $1,075.36 in monthly installments, the amount that would amortize the principal and interest over the duration of the thirty-year note. Vockner contends that the superior court erred in reforming the agreement, based upon its finding of unconscionability, because "there was no finding of fraud, mistake, or overreaching, and because the contract represented the true intentions of the parties."[9] We hold that the superior court did not err in its judgment that partially reformed the contract between Vockner and Erickson.

Courts have reformed contracts to avoid unconscionable results. J. White & R. Summers, Uniform Commercial Code §§ 4–1 at 112, 4–8 at 131 (1972). Professor Dobbs states that "[t]he unconscionable contract may be reformed to limit the unconscionable clause and then enforced as reformed." D. Dobbs, Law of Remedies § 10.1 at 654 (1973). Professor Dobbs further observes that "[I]f it is understood that this does not mean reformation to a true agreement, but reformation to minimum legal standards, then remedy seems entirely suitable." *Id.* § 10.7 at 707.

In the case at bar, the superior court found unconscionable payment terms that did not pay accrued interest and that would

terest in year 29 on the accrued unpaid interest of years 1 through 28—then the balloon would "only" be $311,000 in 2005. While this "mitigates" the problem concerning the diminishing collateral, it creates an additional shocking abuse. Without compounding of interest, the *actual* present value of the note Mrs. Erickson received, even assuming the 8.5 interest rate is and was fair market, was some $50,000 less than its face value of $153,000. (The present value of $311,000 to be received in 30 years is some $24,000, rather than the $75,000 or so that the balloon should be worth at present value if the $153,000 note were to represent $153,000 in present value. (See Exhibit 21)). Thus, Mrs. Erickson lost ⅓ of her equity the instant she "accepted" the 30-year note as closing.

. . . .

If the note does not require compounding the interest accrued, the actual effective rate of interest declines each year. That is, while the $12,000 annual interest (paid or accrued) is 8.5% of the balance in year 1, it is something less than 4% in year 29 ($12,000 interest paid on accrued balance of $300,000+). Not only is Erickson thereby deprived of the interest rate for which she bargained, but the decreasing interest rate works as a powerful disincentive for future owners to refinance the property; refinancing was, effectively, the only hope that Erickson had of actually securing in her lifetime the benefits of the bargain she thought she was making—present and future payments with a present value of $250,000.

8. Inherent in this holding is our rejection of Vockner's argument that the superior court

erred in finding unconscionability where there is no procedural unconscionability in the contract. In support of this contention Vockner argues that the trial court must find both procedural and substantive abuses before decreeing a contract unconscionable. *See* J. White & R. Summers, Uniform Commercial Code §§ 4–3— 4–7 (1972); Leff, *Unconscionability and the Code—The Emperor's New Clause*, 115 U.Pa.L. Rev. 485 (1967); *Johnson v. Mobil Oil Corp.*, 415 F.Supp. 264 (E.D.Mich.1976).

However, not all commentators agree that the court must find both procedural and substantive unconscionability. *See e.g.,* 1 Corbin on Contracts § 128 (1984 Supp.); M.P. Ellinghaus, *In Defense of Unconscionability*, 78 Yale L.J. 757, 777 (1969). Even Williston, who adheres to the concept, states:

> Essentially a sliding scale is invoked which disregards the regularity of the procedural process of the contract formation, that creates the terms, in proportion to the greater harshness or unreasonableness of the substantive terms themselves.

15 S. Williston, Law of Contracts § 1763A at 226–27 (Jaeger Ed.1972).

Adopting Williston's analysis we think the superior court's conclusions that both procedural and substantive unconscionability were proven, if indeed both are required, are not erroneous on the facts of this record.

9. In the usual situation unconscionability is raised as an affirmative defense. The normal remedy when the court finds unconscionability is for the court to refuse specific performance. D. Dobbs, Law of Remedies § 10.1 at 654 (1973); Restatement (Second) Contracts § 208 comment g at 111 (1981).

require a balloon payment of over $300,000 in thirty years, secured by an aging building. Under these circumstances, the court ordered the contract reformed so that Vockner had to pay all the interest accrued to the date of judgment and amortize the principle, thereby eliminating the significant balloon payment due after thirty years. The superior court's actions, in our view, comport with Professor Dobbs' analysis that the aim of reformation in these circumstances is to bring the contract in conformity with minimal standards of conscionability.[10]

## IV. THE SUPERIOR COURT'S REJECTION OF VOCKNER'S DEFENSE OF LACHES.

■ Vockner's final contention is that the superior court erred in rejecting his defense of laches. Vockner maintains that Erickson's four-and-a-half year delay in seeking reformation was unreasonable and prejudicial. The superior court rejected Vockner's laches defense on the grounds that Vockner did not suffer substantial prejudice, and that although late, Erickson instituted the action within the time limitations of the analogous statute of limitations.

In *City and Borough of Juneau v. Breck*, 706 P.2d 313 (Alaska 1985) we stated in part:

> In *Moore v. State*, 553 P.2d 8, 15 (Alaska 1976) this court said that the question of whether laches bars a suit is "properly addressed to the discretion of the trial court and will not be overturned [absent] a definite and firm conviction that a mistake has been committed." In *Moore* we further stated that the defendant must show two "independent" elements before the equitable defense of laches will be applied. The defendant must show, (1) that the plaintiff has unreasonably delayed in bringing the action, and (2) that this unreasonable delay has caused undue harm or prejudice to the defendant. (citations omitted)

We have also noted that where there is a long delay, a lesser degree of prejudice need be shown. *Pavlik v. State*, 637 P.2d 1045, 1048 (Alaska 1981). Here the record fails to show that Vockner has been unduly prejudiced. As the superior court pointed out, the delay did not prejudice Vockner in his conduct of the trial. Additionally, Vockner's contention that the delay in Erickson's bringing this action prejudiced him because he subsequently sold the property is meritless. Vockner sold the property within three or four months of purchasing it from Erickson. To successfully advance a claim of prejudice now, Vockner would have to establish that Erickson unreasonably delayed in not filing her suit within the three to four month period before he resold the property. This he has not done. Although Erickson did delay for four-and-one-half years in filing her suit, "[s]ufficient material prejudice will not be inferred ... from mere lapse of a substantial period of time." *Young v. Williams*, 583 P.2d 201, 204 (Alaska 1978).

Since we do not entertain a definite and firm conviction that the superior court was mistaken in its laches ruling we affirm the superior court's exercise of its discretion in rejecting Vockner's laches defense.[11]

AFFIRMED.

---

**10.** Within a few months of his purchase of the property from Erickson, Vockner resold the property for $290,000. Thus Vockner is not losing the benefit of what he bargained for and the nonpunitive nature of the remedy noted in the Restatement (Second) Contracts § 206 comment g, is served.

**11.** The superior court held that from the point of the subsequent sale it would have been impossible to undo the transaction.