Rockingham
No. 2006-231

THE STATE OF NEW HAMPSHIRE

v.

CHRISTOPHER DOYLE

Argued: September 13, 2007
Opinion Issued: October 17, 2007

*Kelly A. Ayotte*, attorney general (*James W. Kennedy*, assistant attorney general, on the memorandum of law and orally), for the State.

*Sherman & Ricker, PLLC*, of Portsmouth (*Michael A. Ricker* on the brief and orally), for the defendant.

DUGGAN, J. This is an interlocutory appeal from the Superior Court's (*Coffey*, J.) denial of the defendant's motion to dismiss the indictment. We affirm and remand.

The trial court approved the following facts in the interlocutory appeal statement. On March 8, 2005, Gail Webster was acting as supervisor of the checklist for the Town of Windham's annual town election. As supervisor of the checklist, Webster was the "election official," *see* RSA 652:14 (Supp. 2006), responsible for registering voters and maintaining the town's voter checklist, *see* RSA 652:15 (1996). At the same time, however, Webster was running in the election for "Trustee of Cemetery."

At the election, the defendant allegedly became involved in a fight between his father and a third party. Webster attempted to locate a police officer to quell this skirmish and, the State alleges, was pushed by the defendant. As a result, the State charged the defendant with felonious assault upon a town officer pursuant to RSA 659:41 (1996). The indictment alleged that the defendant "did knowingly cause unprivileged physical contact to Gail Webster by striking her in the chest with his hand or hands while she was acting in her official capacity as a town officer at an election."

The defendant moved to dismiss the indictment, arguing that because Webster was on the ballot for trustee of the cemetery she was disqualified from acting as an election official, *see* RSA 658:24 (1996), and thus was not a town officer "discharging a duty of h[er] office" as required by RSA 659:41. The trial court denied the motion, ruling that RSA 658:24 did not prevent the defendant's prosecution under RSA 659:41 because, "[w]hile as a matter of law Ms. Webster ought to have been disqualified from acting as Supervisor of the Checklist at the Windham election, in reality she was not."

To obtain a conviction for assault upon a town officer, the State must prove that: (1) the defendant assaulted a "town, city, or ward officer"; and (2) at the time of the assault, said officer was "in the discharge of any duty of his office at any election." RSA 659:41. The defendant argues that the State cannot carry this burden because, pursuant to RSA 658:24, Webster was automatically disqualified from acting as supervisor of the checklist at the Windham election. Therefore, according to the defendant, all acts conducted by Webster at the election were void, and, as a result, Webster was not discharging "a duty of h[er] office" at the time of the alleged assault as required under RSA 659:41. The State disagrees and emphasizes that, regardless of whether she should have been disqualified, Webster was discharging duties of her office at the time of the assault. The State contends that Webster therefore remains protected under RSA 659:41 as, at minimum, a *de facto* town officer.

Resolution of this case requires an analysis of RSA 658:24 and 659:41. In interpreting the language of a statute, we ascribe the plain and ordinary meaning to the words used and discern the legislative intent from the statute as written. *ElderTrust of Fla. v. Town of Epsom*, 154 N.H. 693, 697 (2007). We will not consider what the legislature might have said, or add language that the legislature did not see fit to include. *Id.* However, we are the final arbiters of the legislature's intent as it is expressed in the words of the statute considered as a whole. *Id.*

With these principles in mind, we turn first to the disqualification statute, RSA 658:24. In pertinent part, RSA 658:24 provides:

> Any person whose name appears on a ballot for an elective position . . . shall be disqualified from performing duties as an election official in that election. A person so disqualified shall not be considered to have vacated any office but rather only to be absent therefrom. A temporary replacement shall be appointed as provided in RSA 658:19-658:22.

■ At the outset, we agree with the defendant that RSA 658:24 is self-executing. The legislature clearly evidenced its intent to make

disqualification compulsory by using the auxiliary verb "shall." *See City of Rochester v. Corpening*, 153 N.H. 571, 574 (2006). "[T]he word 'shall' is generally regarded as a command; although not controlling, it is significant as indicating the intent that the statute is mandatory." *McCarthy v. Wheeler*, 152 N.H. 643, 645 (2005). Had the legislature intended disqualification to be conditional, it would have chosen more permissive language, such as "may" or "might." *See City of Rochester*, 153 N.H. at 574. We therefore agree with the defendant that Webster's candidacy for trustee of the cemetery automatically disqualified her from registering voters at this particular Windham election.

The more difficult question posed by this appeal is what effect this disqualification has on Webster's status at the time of the election, considering she was nevertheless performing duties customary for a supervisor of the checklist. *See* RSA 652:15. We do not believe, as the defendant suggests, that it necessarily follows from Webster's disqualification that all duties performed by her at the election were null and void *ab initio*. We find no support for this proposition in the language of RSA 658:24. Indeed, the only remedy that the disqualification statute explicitly provides for is the appointment of a "temporary replacement" for any disqualified officer. RSA 658:24. On its face, RSA 658:24 appears to be more limited in its effects than the defendant urges.

We believe that for purposes of this appeal, the most salient language of RSA 658:24 is found in the second sentence. There, the legislature explains that a disqualified town officer is not "considered to have vacated any office but rather only to be absent therefrom." RSA 658:24. In other words, a disqualified officer retains possession of his or her respective office even though legally the officer is absent. *Id.* This distinction becomes significant in light of the specific language of the assault statute, RSA 659:41:

> Any person who shall assault a town, city, or ward officer . . . in the discharge of *any duty of his office* at any election shall be guilty of a class A felony or a class B felony, but never less than a class B felony, other provisions of the law to the contrary notwithstanding.

(Emphasis added.) The legislature's use of the phrase "any duty of his office" means that the focus in applying this criminal statute is upon whether the officer was discharging duties customarily assigned to his office. *Id.* The statute does not, as the defendant urges, turn upon the individualized duties of the particular town officer. Were we to say that it did, we would in essence be ignoring the legislature's inclusion of the word

"office" in RSA 659:41. *See State v. Rix*, 150 N.H. 131, 132 (2003) ("Courts can neither ignore the plain language of the legislation nor add words which the lawmakers did not see fit to include."). The legislature chose to focus on the duties of the *office* rather than the duties of the *officer*. We therefore find that town officers are afforded protection under RSA 659:41 when they are assaulted while discharging a duty ordinarily assigned to their office.

■ Webster meets this standard. As discussed above, although Webster had been disqualified to act, she was still in possession of the office of supervisor of the checklist. *See* RSA 658:24. She therefore retained her title as a town officer despite her legal absence. *See id.* Because Webster was aiding in the administration of the checklist, a responsibility customarily assigned to the supervisor of the checklist, she was also engaged in a duty of her office. *See* RSA 652:15. That Webster was disqualified to so act is of no consequence since she was still discharging duties of "her office." RSA 659:41.

■ However, even if we were to agree with the defendant that a criminal charge under RSA 659:41 requires analysis of the individual town officer's duties, Webster would nevertheless remain protected because she acted as a *de facto* officer. "Broadly speaking, an officer de facto is one who has the reputation of being the officer he or she assumes to be, and yet is not a good officer in point of law." 67 C.J.S. *Officers and Public Employees* § 339 (2002). Under the doctrine, "[a] person who enters into an office and undertakes the performance of the duties thereof by virtue of an election or appointment, is an officer de facto, though he ... has subsequently become disabled to hold the office." *Center Hill Sch. Dist. No. 32 v. Hunt*, 110 S.W.2d 523, 525 (Ark. 1937) (quotation omitted); *see also Health Facility Inv. v. Ga. Dept. of Human Resources*, 233 S.E.2d 351, 352 (Ga. 1977) ("[A]lthough a person may be absolutely ineligible to hold" public office, his official acts while in office "are valid as the acts of an officer de facto." (quotation omitted)). The practical effect of the doctrine is to remove any distinction between the acts of a *de facto* and a *de jure* officer insofar as the public and third persons are concerned. 67 C.J.S. *Officers and Public Employees* § 349 (2002).

■ To qualify as a *de facto* officer, the officer's title need not be good in law but she must be in unobstructed possession of her office and discharging its duties in full view of the public. *State v. Porter*, 158 S.E.2d 626, 628 (N.C. 1968); *see also State v. Oren*, 627 A.2d 337, 339 (Vt. 1993). Moreover, as we have stated previously, the *de facto* officer doctrine is:

founded upon considerations of policy and necessity, for the protection of the public and individuals whose interests may be affected thereby. Offices are created for the benefit of the public, and private parties are not permitted to inquire into the title of persons clothed with the evidence of such offices and in apparent possession of their powers and functions.

*State v. Boiselle*, 83 N.H. 339, 341-42 (1928) (quotation omitted). Accordingly, once a person is deemed a *de facto* officer, "[f]or the good order and peace of society [her] authority is to be respected and obeyed until in some regular mode prescribed by law [her] title is investigated and determined." *Id.* at 341. It has been universally accepted that the regular mode for challenging such an officer's title is a suit in which the officer is a party, such as a *quo warranto* proceeding. *See, e.g., State v. Mitchell*, 458 A.2d 1089, 1090 (Vt. 1983).

While we have rarely considered the precise contours of the *de facto* officer doctrine, *see Boiselle*, 83 N.H. at 341-42, the Supreme Court of Vermont has addressed cases similar to this one and applied the doctrine. *See State v. Mitchell*, 458 A.2d at 1090; *State v. Oren*, 627 A.2d at 340. In *State v. Mitchell*, the defendant was convicted under a statute providing for an enhanced penalty for assaults upon "a law enforcement officer performing a lawful duty." *Mitchell*, 458 A.2d at 1089-90. The defendant argued on appeal that his victim had failed to complete a statutorily-required training course and thus his appointment as deputy sheriff was void. *Id.* at 1090. As a result, the defendant asserted that his victim had not been a law enforcement officer "performing a lawful duty" as required by the statute. *Id.* The court found it unnecessary to pass upon the defendant's argument because, irrespective of whether he had the required qualifications for the position, the victim had been operating under color of law and was thus a *de facto* officer. *Id.* Accordingly, the court held that the defendant was barred from challenging the officer's title collaterally in a criminal suit. *Id.*

Similarly, in *State v. Oren*, the defendant appealed his conviction for "hindering a law enforcement officer" after discovering that the purported officer's commission had expired seven days prior to the incident with which he was charged. *Oren*, 627 A.2d at 338. The defendant asserted that the State could not prove that his victim was an officer, a material element of the charge, and therefore the case against him should be dismissed. *Id.* After considering evidence indicating that the officer's commission had lapsed because of a typographical error in the recording of the expiration date of her appointment, the court upheld the defendant's conviction. *Id.* at 339. In support, the court reasoned that, regardless of the technical lapse

of her appointment, the officer was a *de facto* officer at the time of the incident because, in part, she was acting in the "unobstructed possession" of the office. *Id.* As a result, the court held that the officer's status was unassailable by the defendant and the conviction should be affirmed. *Id.*

▪ Even if Webster's legal authority to act technically ceased prior to the incident giving rise to the charge, *id.* at 338-39, as in *Oren*, Webster was in unobstructed possession of her office at the time of the underlying incident and discharging her duties in full view and acquiescence of the public. *Id.* at 339. We agree with the Vermont Supreme Court that in such cases, where the public officer appears to retain the imprimatur of the State and is not a mere usurper, public policy requires that third parties be permitted to rely upon such officer's actions "without the necessity of investigating their title." *Id.* To serve this end, the *de facto* officer doctrine is applicable.

▪ In this case, the defendant has not challenged the legitimacy of Webster's appointment to the office of supervisor of the checklist. Nor has the defendant argued that Webster was not in the unobstructed possession of her office and discharging its duties in full view and acquiescence of the public at the time of the incident. To be sure, the record indicates that the deficiency in Webster's qualifications caused by RSA 658:24 was not even noticed until after the defendant was indicted. While Webster's "rightful authority was gone, color of authority took its place." *State v. Boiselle*, 83 N.H. at 342. Webster was at the election acting under color of title and was thus a *de facto* officer. *See* 67 C.J.S. *Officers and Public Employees* § 343 (2002) ("Persons having color of title may be regarded as *de facto* officers, even though legally they . . . do not possess the statutory qualifications for the office."). Accordingly, the validity of Webster's acts and her title cannot be collaterally attacked by the defendant in this criminal case. *See Mitchell*, 458 A.2d at 1090.

We emphasize that the *de facto* officer doctrine does not completely insulate Webster or her actions from challenge. For instance, it is well-settled that an exception to the doctrine, not relevant here, is that an officer with defective title is not permitted to invoke the doctrine when a party to a suit. *Oren*, 627 A.2d at 339; 67 C.J.S. *Officers and Public Employees* § 349 (2002). If this were, therefore, a *quo warranto* suit, Webster would be unable to invoke the *de facto* officer doctrine in her defense. *See, e.g., Mitchell*, 458 A.2d at 1090. However, in this criminal prosecution of the defendant, Webster is not considered a party. *See id.* at 1090. Thus, this exception to the *de facto* officer doctrine does not apply.

Accordingly, we affirm the trial court because Webster, as a *de facto* officer, was discharging duties of her office as required for a charge under RSA 659:41.

*Affirmed.*

BRODERICK, C.J., and DALIANIS, GALWAY and HICKS, JJ., concurred.