HAWKINS *et al. vs.* THE INTENDANT, ETC., OF JONESBORO.

[WARNER, Chief Justice, being engaged in presiding over the senate organized as a court of impeachment, did not sit in this case.]

1. Though a statute require all voters to be registered, and none are registered, yet, if an election be held, and certain town officers provided for by law be elected by the votes cast, and the persons thus elected enter upon and exercise their functions under color of such election, their predecessors yielding to their supposed right, they are officers *de facto,* and until displaced, may exercise all the powers of officers *de jure.*

2. No tax upon property within the corporate limits of Jonesboro, can be legally collected by the town authorities until after assessment by three citizens of the town, who are freeholders ; and the intendant and commissioners being invested both with the appointing power and the power of reviewing assessments on appeal, cannot appoint any of themselves to act as assessors. Nor can the town lay any tax without passing some ordinance or resolution fixing the the rate, and entering the same upon the minutes or books of the corporation.

3. Whether a tax is necessary for purposes embraced within the charter, is matter for determination by the taxing power, and not by the courts.

4. Where a whole year's finances are involved in the questions made in the bill, the chancellor is not obliged to grant an *ad interim* injunction, though he may believe the system of taxation illegal. He may leave the complainants to their remedies, or let them wait for a final decree on their bill.

Injunction. Officers. Tax. Municipal corporations. Before Judge HILLYER. Clayton County. At Chambers. April 22, 1879.

Report unnecessary.

TIGNER & HODNETT ; STEWART & HALL, for plaintiffs in error.

W. S. WATERSON ; MYNATT & HOWELL, for defendant.

BLECKLEY, Justice.

1. The local legislation applicable to the case is found in acts of 1872, p. 217, and acts of 1876, p. 150. This legis-

lation confines the right to vote for town officers to the registered voters. There was no registry, and yet an election was held for intendant and commissioners, and certain persons were elected by the votes cast. Their predecessors in office yielded to their supposed right; the new board entered upon and exercised their functions under color of the election, and were thus in actual possession of the corporate franchises. They were never ousted or displaced. Such of these facts as do not by direct, affirmative statement appear in the record, are fairly inferable from others which do so appear. It is insisted that the board had no power to levy and collect taxes, because the electors were not registered as the statute requires. We think otherwise. It may be conceded that the intendant and commissioners were not officers of the town *de jure*, but they were undoubtedly such *de facto*; and that position enabled them to exercise, for the time being, all the powers appertaining to officers *de jure*. They were in under color of right, and had exclusive possession. If they did not constitute the governing body of the town, the town had no government actually on foot.

2. The point against the legality of the assessment of property for taxation seems well taken. According to the charter, no tax upon property within the corporate limits of Jonesboro, can be collected by the town authorities until after assessment by three citizens of the town, who are freeholders. Not only are the assessors to be appointed by the intendant and commissioners, but the power of reviewing assessments on appeal is lodged with the same functionaries. The board, it seems, appointed three members of their own body a committee to assess the property. This was wholly unwarranted. Members of the board are not eligible to the appointment of assessors, for they have appellate functions to perform which are inconsistent with original assessment at their hands. Their judgment is to be reserved for ulterior exercise on appeal, and not put forth in the first instance. Moreover, when a statute con-

fers the appointing power, and does not expressly authorize self-appointment, the appointment of some one other than self is always contemplated. The creator is not to be his own creature. It may be thought, and indeed it is so contended by counsel, that the doctrine of *de facto* officers may be applied to the assessors, just as we have applied it to the intendant and commissioners, and that the acts of the assessors may thus be treated as valid. But this would be piling one *de facto* on another, and if such a cumulative process is to be pursued, what limit is there to the number of offices which a commissioner *de facto* of the town of Jonesboro may occupy? Can we first invoke the doctrine to make him a commissioner, and then continue to invoke it to make him anything and everything else? There is, furthermore, this material difference between his situation as a commissioner and his situation as an assessor; his color of right to the former position is not void on its face; the election returns, it may be presumed, neither showed him ineligible, nor the electors unregistered and therefore incompetent to elect him. In other words, the color is not one which vanishes the moment it is inspected. But the color of right to the latter position, if color it can be called, is its own destroyer; it fades away without exposure to anything extrinsic to itself. That he was ineligible, appears upon the very resolution by which he was appointed. The moment he produces his commission it is seen that one of his offices, looked at in the light of the law, is incompatible with the other, and that he has emerged, so to speak, from his own belly. It cannot be sound that an officer having, or sharing, the power of appointment to another office, can, on general principles, become the incumbent of the latter, either *de jure* or *de facto*. The scheme of the charter of Jonesboro in respect to taxation is that it takes two groups of men to raise money by the imposition of taxes; one to fix the rate, appoint assessors, and act as a board of appeal; the other to act as assessors after appointment as such, and assess all the property within the corporate limits. Here

there was but one group, and the effort was to generate the second by sub-dividing the first. The method was altogether inadmissible.

The answer of the defendant says there was an ordinance passed laying a tax for the year 1878, but no copy of the ordinance is produced. To barely affirm its existence is not very satisfactory, especially as it seems difficult to find. Several affidavits in the record by persons interested in the taxation of that year, tend to show that if there be such an ordinance it has not that publicity which is usual. The best way to settle a dispute concerning the existence of a tax law is to exhibit a copy of it; and it would have been much better had the answer set forth a copy, or else furnished the substance by way of recital. Of course no tax can be laid or collected by the town authorities without passing some ordinance or resolution fixing the rate, and entering the same upon the minutes or books of the corporation.

3. The judicial scrutiny which the bill seeks to inaugurate touching the financial condition of the town, the extravagance of its expenditures, etc., should be declined. Taking all the record together, it is not apparent that there is any effort to raise money for purposes *dehors* the charter; and certainly whether a tax is necessary for purposes embraced within the charter is matter for determination by the taxing power, and not by the courts.

4. Notwithstanding the want of competent assessors, and the doubt as to the existence of a proper ordinance, we do not intend to constrain the chancellor to grant an *ad interim* injunction in the present case. He has exercised his discretion, and we shall respect and abide it; for the whole year's finances are involved in the questions made by the bill. It is a grave thing to stop the wheels of a town government on a mere interlocutory order; and no such step should be taken where the consequences of omitting to take it would not be irreparable. The complainants may be left to other remedies, or, at least, wait for a final decree on their bill. If

they are forced illegally to pay the tax in the meantime, they will not be without redress. 56 *Ga.*, 148.

Cited by counsel, (besides the local statutes) 1 Dillon on Cor., §§158, 159; Cooley on T., 540; Burroghs T., *passim*; Potter's Dwarris on Statutes, pp. 214, 215, 222 to 226, note 29.

Judgment affirmed.