## A02A1516. SANDERS v. THE STATE.
(572 SE2d 712)

ANDREWS, Presiding Judge.

Milford Lee Sanders appeals from the denial of his motion for new trial following his conviction of running a stop sign and homicide by vehicle in the first degree by violating OCGA § 40-6-390, reckless driving.[1]

1. In his third enumeration of error, Sanders argues that the trial court erred in denying his motion for directed verdict of acquittal.

> On appeal the evidence is viewed in the light most favorable to support the verdict, and defendants no longer enjoy a presumption of innocence; moreover, an appellate court determines evidence sufficiency and does not weigh the evidence or determine witness credibility. The standard for reviewing a challenge to the sufficiency of the evidence, whether enumerated as error on appeal or made in the form of a motion for directed verdict of acquittal at trial, is whether under the rule of *Jackson v. Virginia,* 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979), the evidence was sufficient for a rational trier of fact to find beyond a reasonable doubt that the defendant was guilty of the charged offense. See, e.g., *Lester v. State,* 226 Ga. App. 373, 376 (2) (487 SE2d 25) (1997); *Noble v. State,* 225 Ga. App. 470, 471-472 (484 SE2d 78) (1997).

*Young v. State,* 242 Ga. App. 681 (1) (530 SE2d 758) (2000).

So viewed, the evidence was that, on March 19, 2000, Alan Cain

---

[1] Sanders was found not guilty of Count 1, DUI (0.10 grams), and Count 4, homicide by vehicle in the first degree based on DUI. The State entered a nolle prosequi on Count 2, DUI (less safe), after the jury was unable to reach a verdict on that count.

and his wife, Karen, were driving toward the K-Mart store on Highway 138 at Tara Boulevard in Clayton County. They had just taken their granddaughter home after a visit. It was around dusk and sprinkling enough that he had activated his intermittent wipers. Highway 138 is a five-lane highway, with two lanes each going east and west and one turn lane. At its intersection with two-lane southbound Rountree Road, there is a stop sign on Rountree Road which dead ends into Highway 138. There is a BP Station at the intersection of Highway 138 and Rountree Road.

As Alan Cain's Cutlass proceeded eastbound through the Rountree Road intersection, Sanders, lost and looking for signs to Interstate 85, missed the stop sign, proceeded across four lanes of traffic, and plowed into the Cains' Cutlass with his Dodge Dakota pickup. The pickup's right front end hit the Cutlass in front of its driver's door and pushed the Cutlass approximately 20 feet off the road into a field. The Dakota turned over on the driver's side.

Alan Cain attempted to exit both driver's side doors, but both were jammed. He finally managed to exit the rear passenger door and, as he did so, reached back to touch his wife's shoulder, saying "honey, let's go." As he did, she fell over and he heard gurgling sounds and ran for help. Mrs. Cain died as a result of blunt force trauma to her head and chest, including a skull fracture.

Taylor, who lived in the neighborhood, was in the turn lane beginning to turn left onto Rountree when she saw the truck "flying" and did not think he could stop. She did not hear any skidding or horn and saw the truck hit the Cains. Aleva, who drove Highway 138 several times a week, was also going east in the turn lane in moderate rain when he saw the truck go fast through the stop sign and hit the Cutlass. He tried to help Cain out of the Cutlass, and they attempted to get Mrs. Cain out, but could not. Aleva said Mrs. Cain looked like the seat belt had cut her throat and blood was "spurting everywhere." Aleva then helped Sanders, his wife, and stepdaughter out of the overturned Dakota. He noted a strong odor of alcohol on Sanders and in the truck.

Livas, also headed east in light to moderate rain, saw a "green flash" on her left, a truck, which "flew through the stop sign and proceeded to go straight." She then saw a flash of silver as the Cutlass was hit. Livas turned around and went back to the accident, helping the two women out of the truck. She stated that the older woman, Mrs. Sanders, had a very strong smell of alcohol on her breath.

Clayton Officer Mundy was driving approximately a half-mile from the accident and heard what he believed to be a wreck. He went to the scene, arriving in a "misty rain." He approached Sanders who said he was from Alabama, did not know the road, was trying to go straight, and then realized there was a stop sign. Sanders made no

mention of his brakes failing. Sanders was swaying, slurring his speech, and had an odor of alcohol about him. According to Mundy, the BP Station lights illuminated the stop sign and there were street-lights every 100 to 120 feet on Highway 138.

Clayton Officer Hagan investigated the accident. He talked to Sanders who told him he was southbound on Rountree looking for Interstate 85 and "before he knew it, he was passing the stop sign doing approximately 40 miles per hour, and struck the vehicle that was going eastbound. . . ." Again, Sanders made no mention of brake failure. Hagan did not find any skid marks in the intersection. Hagan also noticed a moderate odor of alcohol about Sanders, that his speech was mumbled, and he was unsure about his walking. Sanders said he had had a couple of beers. Because of the rain, no field tests were conducted. Sanders tested 0.104 and 0.100 on the Intoxilyzer 5000 at 9:27 p.m.

Sanders, his wife, and stepdaughter all testified that they had driven from their home in Beulah, Alabama, around 11:00 a.m. to a friend's place in Mableton, Georgia, arriving at 1:00 p.m. The friend, a hairdresser, cut Sanders' hair and then colored and straightened Mrs. Sanders' hair and gave Lauren McCall, then 15 years old, a permanent. Sanders and the hairdresser's husband watched a race, and he had two Coors Light beers between 1:00 and 3:00 p.m. He then accompanied McCall, who drove, to a shopping mall. Upon returning around 5:00 p.m., Sanders had over half of a third beer. Sanders testified that he was careful about alcohol consumption because "I have gotten in trouble drinking and driving before, so I limit what I drink if I'm going to be driving."

Leaving from Mableton to return to Alabama, Sanders missed Interstate 285 on the west side of town and drove all the way through Atlanta, getting on Interstate 285 on the east side of town. He was going around Interstate 285, missed an exit, and ended up on Rountree Road, looking for signs to Interstate 85. He testified that all three of them saw the stop sign at the same time and that "either the brakes gave way or the truck was hydroplaning, because it did not stop."

There was no error in the trial court's denial of the motion for directed verdict.

2. Sanders' first enumeration is that the trial court erred in convicting him of vehicular homicide when the indictment "failed to allege a specific reckless act."

Count 5 alleged that Sanders committed homicide by vehicle in the first degree in that he "without malice aforethought, caused the death of another person, Karen Ann Cain, through a violation of [OCGA] § 40-6-390, Reckless Driving, by unlawfully driving a motor vehicle in reckless disregard for the safety of persons and property

when the accused struck the vehicle in which Karen Ann Cain was a passenger."

The indictment was returned by the grand jury on July 26, 2000, and Sanders was arraigned on September 13, 2000. At arraignment, counsel for Sanders, who represented him through trial and on appeal, filed numerous motions, none of which attacked the form or sufficiency of the indictment. Also, Sanders was given an additional five days in which to file other motions. No general or special demurrer was filed on Sanders' behalf contending that Count 5 was defective on its face or not specific enough. See *State v. Eubanks*, 239 Ga. 483, 484-485 (238 SE2d 38) (1977). At trial, beginning June 18, 2001, preliminary motions were heard by the court, and, again, no challenge was made to any count of the indictment.

After conviction and filing of a motion for new trial on the general grounds on June 29, 2001, by amended motion for new trial filed October 30, 2001, Sanders contended that Count 5 was flawed because it "failed to allege a specific act of Reckless Driving."

Having failed to challenge the indictment before trial and having filed no proper motion in arrest of judgment during the term in which the judgment of conviction was entered, any error has not been reserved for our review. *Youngblood v. State*, 253 Ga. App. 327, 328 (2) (558 SE2d 854) (2002); *McKay v. State*, 234 Ga. App. 556, 559 (2) (507 SE2d 484) (1998); *Collum v. State*, 195 Ga. App. 42 (1) (392 SE2d 301) (1990).

3. Although acknowledging that he did not file a written request to charge the lesser included offense of vehicular homicide in the second degree, Sanders' third enumeration is that the trial court erred in not giving such a charge.

It was not until after the jury had been deliberating for some time and sent out a note asking if "first degree on Count V be reduced to another charge or offense" that Sanders orally requested such a charge to be given.

" '(T)he failure to instruct on a lesser included crime is not error, regardless of whether the evidence would have authorized or demanded such a charge, in the absence of a written request.' (Citations and punctuation omitted.) *Henry v. State*, 265 Ga. 732, 737 (6), 738 (462 SE2d 737) (1995)." *Taylor v. State*, 232 Ga. App. 825, 826 (4) (502 SE2d 540) (1998). See also *Tucker v. State*, 238 Ga. App. 645, 646 (519 SE2d 745) (1999).

4. Pursuant to the State's notice of intent to introduce a similar act, the trial court allowed into evidence a 1994 DUI arrest of Sanders, who alleges error in that the prior incident was not similar and was only introduced to inflame the jury.

LaGrange Officer Watson testified that, around 1:00 a.m. on November 16, 1994, he saw Sanders' Dodge cross the centerline twice

and observed that one taillight was out. After initiating a traffic stop, Officer Watson detected the strong odor of alcohol and asked Sanders if he had been drinking. Sanders, who had to lean on his vehicle for support, acknowledged that he had been drinking. Sanders pled guilty to the lesser included charge of reckless driving.

The 1994 charge was not, as argued by Sanders, introduced as a similar reckless driving act, but as a similar DUI act. As such, it was admissible, and the State satisfied the criteria of *Williams v. State*, 261 Ga. 640, 642 (2) (b) (409 SE2d 649) (1991).

As this Court has repeatedly noted,

> "it is the simple act of driving . . . while under the influence that establishes the commission of (the crime)." [*Kirkland v. State*, 206 Ga. App. 27, 28 (3) (424 SE2d 638) (1992).] "Evidence of a prior DUI offense, regardless of the circumstances surrounding its commission, is logically connected with a pending DUI charge as it is relevant to establish that the defendant has the bent of mind to get behind the wheel of a vehicle when it is less safe for him to do so." (Citations omitted.) *Smith v. State*, 236 Ga. App. 548, 552 (3) (512 SE2d 19) (1999), rev'd on other grounds, 272 Ga. 83 (526 SE2d 59) (2000).

*Reese v. State*, 252 Ga. App. 650, 652 (2) (556 SE2d 150) (2001).

We find no error by the trial court in admitting evidence of Sanders' prior DUI.

5. Finally, Sanders objects to the trial court's having considered his history of drinking and driving and his apparent continuing problems with this issue in the sentencing phase of his case.

> "In determining what sentence to impose upon a defendant, a trial court may consider any evidence that was properly admitted during the guilt-innocence phase of the trial. *Dorsey v. Willis*, 242 Ga. 316 (249 SE2d 28) (1978)." [Cits.] Also, in reaching the sentencing decision the trial court may also consider the conduct and attitude of defendant observed during trial. [Cit.]

*Rogers v. State*, 191 Ga. App. 855 (2) (383 SE2d 331) (1989).

*Judgment affirmed. Phipps and Mikell, JJ., concur.*

Decided October 15, 2002

Sexton & Morris, Lee Sexton, Joseph S. Key, for appellant.

*Robert E. Keller, District Attorney, Lalaine A. Briones, Assistant District Attorney,* for appellee.