A04A0529. MARTIN v. THE STATE.
(598 SE2d 828)

PHIPPS, Judge.

Antonio Frank Martin was convicted of two counts of sale of cocaine. Following denial of his motion for new trial, he appeals. He challenges the constitutional effectiveness of his privately retained trial attorney, the trial court's admission of incriminating evidence, and the sufficiency of the evidence to support the verdict. Finding no merit in any of these challenges, we affirm.

Martin was arrested for sale of crack cocaine to undercover narcotics agent King and a confidential informant (CI) on May 17, 2002, and to undercover narcotics agents King and Jones the next day. King and Jones were working in a multi-jurisdictional drug task force making undercover drug buys in various areas of west Georgia, including Carroll, Heard, and Meriwether Counties, from May 2001 through June 2002. During the operation, about 145 people were arrested. Drug buys were recorded by video cameras placed in undercover vehicles and by audio recording devices concealed on the undercover agents.

King testified that on May 17, a CI took her to a house in Carrollton (Carroll County) to make a drug buy from a person named Nikki. When they knocked on the door, they were greeted by an unnamed male suspect whom King identified as "Carroll 02-147."

The suspect greeted King and the CI at the door, said that Nikki was not home, and asked them what they needed. In drug parlance, King informed the suspect that she wanted to buy $100 worth of crack cocaine. He led her and the CI into the bedroom of the house, took a matchbox containing a little over one gram of crack cocaine from the dresser, and gave it to King in exchange for $100. He told her that he would be "reupping," i.e., getting more crack cocaine, later that day. King said she might be interested in purchasing more. He gave her his phone number. Shortly thereafter, King prepared a report identifying the person from whom she had purchased the cocaine as a black male, approximately 18 to 22 years old, approximately 5′5″ to 5′7″ in height, weighing approximately 140 to 160 pounds.

The following day, King telephoned the suspect and set up another drug buy at a store in Carrollton. King and Jones drove an undercover vehicle to the location. The suspect was already parked there. Jones parked the undercover vehicle in an adjacent space. The suspect exited his vehicle and approached King, who was seated in the front passenger seat of the undercover vehicle. He then gave King and Jones less than one gram of crack cocaine in exchange for $100.

After the buys, King and Jones secured the substances they had bought in evidence bags and placed the bags in a safe maintained by the drug task force. From there, task force local agent Cobb transferred the bags to an evidence room. Another task force agent then transported the evidence bags to the state crime lab, where the contents of both tested positive for cocaine.

On September 18, 2002, Cobb showed King and Jones a photograph of Martin, and they positively identified him as the suspect referred to as Carroll 02-147. Both agents testified that they had received special training in identifying criminal suspects by concentrating on immutable or distinctive physical features when they are in close proximity to the suspects. According to King, they were trained "to burn a picture of them in our mind so we can remember them." Jones positively identified Martin from the photograph provided by Cobb based in part on a distinctive hairstyle he was wearing in the photograph and at the time of the drug buy, and upon certain characteristics pertaining to his eyes. King testified that when shown the photograph by Cobb, she immediately recognized Martin as the person who had sold her the cocaine.

The substances purchased by King and Jones on May 17 and 18 were admitted in evidence at Martin's trial in two, separate evidence bags. The jurors were shown a videotape of the drug buy at the store, and they listened to an audiotape of the buy at the house. Martin and his mother appeared as the sole defense witnesses at trial. They both

denied that he was the subject depicted in the videotape of the May 18 drug buy. The jury found otherwise and convicted Martin of the offenses charged.

1. Martin charges his trial lawyer with ineffective assistance in various regards.

> In order to prevail on a claim of ineffective assistance of counsel, a criminal defendant must show that counsel's performance was deficient and that the deficient performance so prejudiced the client that there is a reasonable probability, i.e., a probability sufficient to undermine confidence in the outcome, that but for counsel's unprofessional errors the result of the proceeding would have been different. The criminal defendant must overcome the strong presumption that trial counsel's conduct falls within the broad range of reasonable professional conduct.[1]

> Generally, the burden is on the defendant claiming ineffectiveness of counsel to establish . . . his attorney's representation in specified instances fell below an objective standard of reasonableness. . . . The trial court's determination that an accused has not been denied effective assistance of counsel will be affirmed on appeal unless that determination is clearly erroneous. In the absence of testimony to the contrary, counsel's actions are presumed strategic. The decisions on which witnesses to call, whether and how to conduct cross-examinations, what jurors to accept or strike, what trial motions should be made, and all other strategies and tactical decisions are the exclusive province of the lawyer after consultation with the client. A conviction will not be reversed on the basis of ineffective assistance of counsel unless counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.[2]

Martin claims that his trial attorney was ineffective in failing to call additional witnesses who were acquaintances of Martin, who would have testified at trial that he was not the person depicted in the videotape of the May 18 drug buy, and who were available to testify

---

[1] (Citations and punctuation omitted.) *Woods v. State*, 275 Ga. 844, 846-847 (3) (573 SE2d 394) (2002).

[2] (Citations and punctuation omitted.) *Sewell v. State*, 229 Ga. App. 685, 687 (1) (494 SE2d 512) (1997).

at the hearing on Martin's motion for new trial. But other evidence introduced at the hearing on Martin's motion for new trial showed that neither Martin nor his mother informed the defense team of the existence of any of the witnesses. As a general rule, this would insulate counsel from a claim that he was ineffective in failing to call the witnesses.[3] Nonetheless, Martin argues that due to the centrality of the identification issue to the defense, counsel should have asked about the existence of other witnesses. Counsel, however, testified that he decided not to call other defense identification witnesses because Martin's mother was a very credible witness (notwithstanding her relationship to the defendant), and he doubted the effectiveness of other witnesses providing cumulative testimony. We cannot say, as a matter of law, that this trial strategy was unreasonable.[4]

Martin also complains of trial counsel's failure to file a motion to suppress evidence. It is clearly settled, however, that the mere failure to file a suppression motion does not constitute per se ineffective assistance of counsel.[5] Martin's burden is to make a strong showing that if trial counsel had made a motion to suppress, the damaging evidence would have been suppressed.[6] Martin has not carried this burden.

2. Martin claims that the state failed to establish a chain of custody for the photograph through which the undercover agents identified him, and for the cocaine allegedly sold by him on May 17 and 18, because task force agent Cobb did not testify. We find no merit in this claim.

> Where the State seeks to introduce evidence of a fungible nature, it must show a chain of custody adequate to preserve the identity of the evidence. The burden is on the State to show with reasonable certainty that the evidence is the same as that seized and that there has been no tampering or substitution. The State need not negative every possibility of tampering, and need only establish reasonable assurance of the identity of the evidence. When there is only a bare speculation of tampering, it is proper to admit the evidence and let what doubt remains go to the weight.[7]

"Notwithstanding [Martin's] argument to the contrary, [Cobb's] failure to testify did not render the [cocaine] inadmissible in the

---

[3] See *Champion v. State*, 238 Ga. App. 48, 49 (1) (a) (517 SE2d 595) (1999).
[4] See generally *Letson v. State*, 236 Ga. App. 340, 341-342 (2) (512 SE2d 55) (1999).
[5] *Edwards v. State*, 224 Ga. App. 332, 334 (3) (a) (480 SE2d 246) (1997).
[6] Id.
[7] (Footnote omitted.) *Harrell v. State*, 257 Ga. App. 177, 178 (570 SE2d 607) (2002).

absence of any indication of tampering or substitution. [Cits.]"[8] "The fact that one of the persons in control of a fungible substance does not testify at trial does not, without more, make the substance or testimony relating to it inadmissible."[9] And the state did not need to prove a chain of custody for the photograph that was admitted into evidence, because it was a nonfungible item that could be recognized by observation.[10]

3. Finally, Martin challenges the sufficiency of the evidence to support the verdict. Under the standard set forth in *Jackson v. Virginia*,[11] the evidence was sufficient to enable a rational trier of fact to find Martin guilty beyond a reasonable doubt of the charged crimes.

*Judgment affirmed. Smith, C. J., and Johnson, P. J., concur.*

DECIDED APRIL 13, 2004.

*Alice C. Stewart*, for appellant.
*Peter J. Skandalakis, District Attorney, Charles M. Lane, Assistant District Attorney*, for appellee.

[8] *Eppinger v. State*, 231 Ga. App. 614, 615 (2) (500 SE2d 383) (1998).
[9] (Citations and punctuation omitted.) *Mathis v. State*, 204 Ga. App. 244 (1) (418 SE2d 800) (1992).
[10] *Pace v. State*, 271 Ga. 829, 840-841 (26) (524 SE2d 490) (1999).
[11] 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).