## A06A0047. KEITH v. THE STATE.
### (632 SE2d 669)

PHIPPS, Judge.

Thomas Lamar Keith was indicted for child molestation, attempted statutory rape, attempted incest and cruelty to children. He was tried by a jury and convicted of child molestation and cruelty to children. He was sentenced to serve 20 years in confinement. Keith claims that the evidence was insufficient to support his convictions and that the trial court erred by failing to sustain his challenge to part of the indictment, admitting evidence of his custodial statement, denying his motion for mistrial and denying his claim that the arrest warrant and all subsequent proceedings were invalid. Keith also claims that his trial counsel was ineffective in numerous respects. We conclude that Keith's challenge to the indictment is untimely, that the evidence was sufficient to support his convictions, that the trial court did not err as Keith claims and that Keith has failed to show ineffective assistance of counsel. Thus, we affirm.

In July 2002, S. P. was 15 years old and lived with her mother and stepfather. S. P. testified that Keith is her father[1] and that on July 12, 2002, she spent the night at his apartment. While S. P. was on the couch in the living room watching television, Keith came in, "unzipped his pants and pulled his privates out." Keith then pushed up S. P.'s nightgown, pulled down her panties and lay on top of her. S. P. said that Keith tried unsuccessfully to put his penis inside her vagina. She said that he was moving up and down and some "moist stuff" ended up on her thigh. S. P. asked him what he was doing and then pushed him off. Keith told her to go to the bathroom and wash. She said that she wiped the "stuff" off her thigh and flushed it down the toilet.

Keith told S. P. that he was sorry and that he had pictured her as her mother when she was younger. S. P. told him that she wanted to go home. Keith responded that he first needed a moment of prayer. While Keith was praying, S. P. went into the bathroom and put on her clothes. Keith then told S. P. that he was not her father and she was not his daughter. S. P. testified that that made her feel bad. Keith told her not to tell anyone what had happened because his mother, whom

---

[1] S. P.'s mother also testified that Keith is S. P.'s father.

S. P. referred to as Grandma Flora, was 88 and it would kill her if she found out. S. P. called her mother and told her that she wanted to come home instead of going to Grandma Flora's house as had been originally planned. Before taking S. P. home, Keith took her to Wal-Mart and told her to pick out anything she wanted.

S. P. did not tell her mother or stepfather what had happened when she arrived at home because she was afraid of what they might do. After her mother left for work, S. P. took a shower because she "felt dirty." S. P. then went to her maternal grandmother's house and told her what had happened. When S. P.'s mother finished work, she was told what had happened. S. P. then went to the police station with her mother and grandmother and gave a statement to a detective about the incident. The detective sent S. P. to a hospital for a physical examination. On July 16, 2002, Derita Swann, a forensic interviewer, interviewed S. P. The interview was videotaped and later played for the jury.

After the incident, S. P. attended weekly counseling sessions. S. P.'s maternal grandmother testified that S. P. changed after the incident and that she was at times extremely sad.

1. Keith claims that the trial court erred by denying his motion in arrest of judgment because Count 4 of the indictment, which charged him with cruelty to children, failed to state a violation of Georgia law.

Keith was convicted on January 31, 2003. That same day he filed a motion for new trial, but did not challenge the indictment. On April 8, 2005, Keith filed an amended motion for new trial in which he challenged, for the first time, Count 4 of the indictment. Keith also argued this issue at the motion for new trial hearing held on June 16, 2005. However, a motion for new trial is not the proper method for attacking the sufficiency of an indictment.[2]

After a defendant has been convicted under an indictment and judgment has been entered on the conviction, the indictment may be challenged in a motion in arrest of judgment, which "asserts that the indictment contains a defect on its face affecting the substance and real merits of the offense charged and voiding the indictment, such as failure to charge a necessary element of a crime."[3] Keith's argument that Count 4 of the indictment failed to allege a crime under Georgia law is cognizable as a motion in arrest of judgment.[4] "However, a

[2] *McKay v. State*, 234 Ga. App. 556, 559 (2) (507 SE2d 484) (1998).

[3] Id.

[4] See id.

motion in arrest of judgment must be filed within the same term of court in which the judgment was entered, and therefore, [Keith's] motion was untimely."[5]

Keith's claim is also cognizable in a habeas proceeding.[6] But Keith's claim cannot be construed as a habeas petition because it was not filed in the county where he is incarcerated but instead was filed in the county where he was convicted and sentenced.[7]

2. Keith claims that the trial court erred by denying his motion for directed verdict on the child molestation charge. He argues that the evidence was insufficient to support his conviction because there was no physical evidence or other support for S. P.'s claims.

The standard of review for the denial of a motion for directed verdict is the same as that for determining the sufficiency of the evidence to support a conviction.[8]

> On appeal from a criminal conviction, the evidence is construed in the light most favorable to the verdict of guilt, and the presumption of innocence no longer applies. As an appellate court, we do not weigh the evidence, judge the credibility of witnesses, or resolve conflicts in trial testimony when the sufficiency of evidence is challenged. Instead, we determine if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[9]

A person commits the offense of child molestation by doing "any immoral or indecent act to or in the presence of or with any child under the age of 16 years with the intent to arouse or satisfy the sexual desires of either the child or the person."[10] Count 1 of the indictment charged Keith with child molestation by exposing his penis to S. P.

Georgia law does not require corroboration of a child molestation victim's testimony.[11] S. P.'s testimony was sufficient to support Keith's conviction for child molestation.[12]

3. Keith claims that the evidence was insufficient to support his conviction for cruelty to children.

---

[5] *Wright v. State*, 277 Ga. 810, 811 (596 SE2d 587) (2004); *Sanders v. State*, 258 Ga. App. 16, 19 (2) (572 SE2d 712) (2002).

[6] See *Wright*, supra.

[7] See id.

[8] *Hash v. State*, 248 Ga. App. 456, 457 (1) (546 SE2d 833) (2001).

[9] *Neal v. State*, 271 Ga. App. 283, 285 (1) (609 SE2d 204) (2005) (citation and punctuation omitted).

[10] OCGA § 16-6-4 (a).

[11] *Cantrell v. State*, 231 Ga. App. 629, 630 (500 SE2d 386) (1998).

[12] See id.; see also *Johnson v. State*, 231 Ga. App. 823 (1) (499 SE2d 145) (1998).

A person commits the offense of cruelty to children when he "maliciously causes a child under the age of 18 cruel or excessive physical or mental pain."[13] Count 4 of the indictment alleged that Keith maliciously caused S. P. cruel and excessive physical and mental pain "when he attempted to have sexual intercourse with her and told her she was not his daughter."

Keith argues that because the jury acquitted him of the attempted statutory rape and attempted incest charges, the only basis for his conviction was the allegation that he told her she was not his daughter. We disagree. The jury found Keith guilty of child molestation. Moreover,

> [t]he determination of what is cruel or excessive physical or mental pain is to be made by the jury. "Cruel" and "excessive" are adjectives which inherently require a consideration of degree; the law does not set a bright line but leaves to the trier of fact, taking into account societal norms generally accepted, whether certain behavior inflicts "cruel" or "excessive" pain (in this instance, mental rather than physical pain). There will be a gray area where some would say it is and some would say it is not, and neither is wrong as a matter of law. . . . We must determine only whether the circumstances here, taking into account the evidence in favor of the finding and all reasonable inferences from that evidence, would prohibit the finding made by the jury.[14]

A determination of what constitutes excessive mental pain need not depend solely on the victim's testimony.[15]

S. P. told the details of the incident to her maternal grandmother, her mother, a detective, and Swann, and recounted them again at trial. Each time, she got upset. S. P. underwent weekly counseling to help her cope with the incident. Viewed in the light most favorable to the verdict, the evidence was sufficient to support the jury's finding that Keith maliciously caused S. P. cruel or excessive physical or mental pain.[16]

4. Keith claims that the trial court erred by admitting a statement he made while in custody. He argues that the statement was the

---

[13] OCGA § 16-5-70 (b).

[14] *Sims v. State*, 234 Ga. App. 678, 679-680 (1) (507 SE2d 845) (1998) (citation and punctuation omitted).

[15] *Alford v. State*, 243 Ga. App. 212, 214 (3) (534 SE2d 81) (2000).

[16] *Wilhelm v. State*, 237 Ga. App. 682, 685 (3) (516 SE2d 545) (1999).

result of custodial interrogation and that he should have been given *Miranda*[17] warnings, but was not.

After Keith was arrested, he was transported to the Cherokee County Health Department to have blood drawn and hair samples taken. While there, Keith told City of Canton Police Detective German Rivas that he wanted to talk to him about the case. Rivas told him that he could take a statement only if he read Keith his *Miranda* rights and Keith agreed to waive those rights. Keith responded that he was not going to waive his rights. Rivas gave him a business card and told Keith to have his attorney contact him if he wanted to talk. Keith then told Rivas that he wanted to tell him about what happened. Keith told Rivas that his daughter had gone swimming and that after swimming, she had come into his apartment and put on his pajama bottoms. Keith stated that any of his DNA found on her could have come from his pajama bottoms. He also stated that he was a bachelor who had sex all over the apartment, which would explain why his DNA would be all over the apartment.

Keith filed a pretrial motion to exclude his statement, and the trial court conducted a *Jackson-Denno*[18] hearing prior to admitting the statement at trial. Contrary to his argument on appeal, Keith testified at the hearing that Rivas did read him his *Miranda* rights. Rivas then told him that all he wanted to know was the truth and if Keith told the truth, he would talk to the district attorney about getting the charge reduced to enticing a minor. The trial court ruled that the statement was not the product of questioning by Rivas and that it was freely and voluntarily made.

*Miranda* warnings are required to be administered when an individual is interrogated while in custody.[19] *Miranda* warnings are not a prerequisite to the admission of voluntary statements not made in response to any form of custodial questioning or interrogation.[20] The term "interrogation" refers not only to express questioning, but also to "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect."[21]

Keith argues that because he was being required to provide blood and hair samples pursuant to a search warrant, he was in a vulnerable and stressful situation. Thus, he claims the officers should have

[17] *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966).

[18] *Jackson v. Denno*, 378 U. S. 368 (84 SC 1774, 12 LE2d 908) (1964).

[19] *Syfrett v. State*, 210 Ga. App. 185, 186 (3) (435 SE2d 470) (1993).

[20] Id.

[21] *Rhode Island v. Innis*, 446 U. S. 291, 301 (100 SC 1682, 64 LE2d 297) (1980) (footnotes omitted).

known that their actions were reasonably likely to elicit an incriminating response. We disagree. Presumably, any suspect who has been arrested and is in police custody is in a vulnerable and stressful situation. The fact that Keith was also subject to a search warrant seeking samples of his blood and hair did not provide Rivas with knowledge of any "unusual susceptibility of [Keith] to a particular form of persuasion."[22] The trial court found the testimony by Rivas regarding the lack of *Miranda* warnings and any questioning prior to Keith's statement to be credible. We uphold a trial court's findings as to factual determinations and credibility relating to the admission of a statement unless clearly erroneous.[23] Based on our review of the *Jackson-Denno* hearing transcript, we conclude that the trial court did not err by admitting the statement based on its determination that it was not the product of custodial interrogation.[24]

5. Keith claims that the trial court erred by denying his motion for mistrial, made during testimony by Rivas. He argues that the mention of the word "incarceration" improperly placed his character in issue.

Rivas testified that he investigated the child molestation allegations against Keith. He explained that a female officer interviewed S. P. and that S. P. told her that her mother was trying to get child support from Keith. On cross-examination, when asked if the female officer had followed up with any questions on that topic, Rivas said "no questions were mentioned because we didn't feel it was important to the case, because if he's incarcerated then she couldn't collect child support." After Keith's counsel finished cross-examining Rivas and the state conducted a redirect examination and rested its case, Keith moved for mistrial based on Rivas's comment that the child support issue would not be important if Keith was incarcerated. The trial court ruled that the motion was untimely and that even if it was not untimely, the testimony by Rivas did not put Keith's character in issue.

"[A] motion for mistrial which is not made at the time the questions objected to are answered is not timely and will be considered as waived because of the delay in making it."[25] Even if the motion had not been waived, the testimony by Rivas, which appeared to refer to future incarceration, did not place Keith's character in issue.

---

[22] Id. at 302, n. 8.

[23] *Overstreet v. State*, 250 Ga. App. 336, 340 (4) (551 SE2d 748) (2001).

[24] See *Walton v. State*, 267 Ga. 713, 718 (4) (482 SE2d 330) (1997).

[25] *Peoples v. State*, 184 Ga. App. 439, 440 (2) (361 SE2d 848) (1987).

6. Keith claims that his trial counsel was ineffective in numerous ways, but fails to explain how his defense was prejudiced by any of them.

To establish ineffectiveness of trial counsel, Keith must show that his counsel's performance was deficient and that the deficient performance prejudiced his defense.[26] The standard for attorney performance is reasonably effective assistance considering all the circumstances, with a strong presumption that, under the circumstances, the challenged action might be considered sound trial strategy.[27] The test for reasonable attorney performance is " 'whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. . . .' "[28]

Decisions about what trial motions should be made, which witnesses to call, whether and how to conduct cross-examinations and all other strategies and tactical decisions are the exclusive province of the attorney after consultation with the client.[29] A conviction will not be reversed for ineffective assistance of counsel unless "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."[30]

(a) Keith claims that his trial counsel failed to file and argue pretrial motions for a preliminary hearing, for DNA testing to negate the allegation of paternity, for funds to hire an expert to review the videotape of S. P.'s statements and for funds to hire a private investigator to locate and interview witnesses for the defense.

At the motion for new trial hearing, Keith's trial counsel testified that he did not request a paternity test because it was the state's burden to prove paternity and it would have hurt Keith's case if the test determined that he was S. P.'s father. Trial counsel testified that he reviewed the videotape of S. P.'s statement "probably a dozen times," that he did not believe that S. P. had been coached by the interviewer and therefore did not think it was necessary to hire an expert to review the videotape. He testified that he did not hire an investigator to locate witnesses because he had located the witnesses he knew about. These decisions were all strategic and Keith has not shown that the strategy was unsound.

(b) Keith claims that trial counsel failed to investigate and interview witnesses critical to the defense, but does not identify any such witnesses. Trial counsel testified that he had investigated the

---

[26] *Strickland v. Washington*, 466 U. S. 668, 687 (104 SC 2052, 80 LE2d 674) (1984).

[27] Id. at 687-689.

[28] *Stansell v. State*, 270 Ga. 147, 150 (2) (510 SE2d 292) (1998) (citations omitted).

[29] *Martin v. State*, 267 Ga. App. 28, 30 (1) (598 SE2d 828) (2004).

[30] Id.

witnesses of which he was aware. Keith has not shown deficient performance or prejudice.

(c) Keith claims that trial counsel should have located and called a witness to establish that S. P. had made prior false allegations against another individual of sexual battery or other misconduct. Trial counsel testified that he did locate and interview the relevant witness and determined that it was not a prior false allegation and it would have been improper to call the witness. Keith has not shown that counsel's decision was unsound.

(d) Keith claims that counsel should have called witnesses to impeach the statements and credibility of S. P. and her mother, but does not identify any such witnesses.

When determining the prejudicial effect of counsel's failure to call a witness, a defendant must make an affirmative showing that specifically demonstrates how counsel's failure affected the outcome of his case.[31] Trial counsel's failure to call a witness cannot be deemed "prejudicial" without a showing that the witness's testimony would have been relevant and favorable to the defendant.[32]

At the motion for new trial hearing, Keith's trial counsel testified that their theory of defense was that S. P. and her mother wanted Keith to pay child support for S. P. and "he was going to pay child support or he was going to pay." Trial counsel was asked why he did not call family members to help establish the theory that S. P.'s allegations were motivated by Keith's failure to pay child support. Trial counsel explained that S. P. and her mother had made it clear, on cross-examination, that there was a child support issue. He did not think it necessary to call Keith's family members. He also said that they discussed having the family members present in the courtroom to show support for Keith versus calling them as witnesses and having them sequestered and that it was a judgment call not to use them as witnesses.

The only family member who testified at the motion for new trial hearing was Keith's niece. She testified that S. P.'s mother became angry with Keith and told him that she would see that he went back to jail. She testified that this occurred before S. P.'s allegations against Keith. Keith testified at the hearing that he wanted his trial counsel to call his niece as a witness at trial. Trial counsel was never asked specifically why he did not call Keith's niece.

---

[31] *Letson v. State*, 236 Ga. App. 340, 341 (2) (512 SE2d 55) (1999).

[32] Id.

To the extent that Keith now claims that the failure to call his niece at trial constituted ineffective assistance of counsel, we conclude that the vague testimony provided at the motion for new trial hearing was not sufficient to support such a claim.

(e) Keith claims that trial counsel failed to object to hypothetical questions the state asked the emergency room doctor, but fails to support his claim with any reference to the record or transcripts in this case. In the absence of such reference, we will not search for or consider this claim.[33]

(f) Keith points to trial counsel's failure to object to Rivas's testimony about his incarceration. Trial counsel testified that his failure to object at the time was error, but stated that he did not want to draw more attention to the comment because of his client's prior incarceration. That was a strategic decision not amounting to ineffective assistance. Moreover, as set forth in Division 5, supra, the comment by Rivas did not place Keith's character in issue.

(g) Keith claims that trial counsel failed to advise him that a notice of aggravation of punishment had been filed by the state and that he was subject to recidivist punishment. Keith's original counsel, who did not try the case, testified that he received a plea offer from the state that included an intention to include a recidivist count and that he would have told Keith about that and explained what it meant. The plea offer that counsel communicated to Keith would not have subjected him to recidivist treatment, and that was one of the reasons Keith accepted the offer and initially pled guilty. Keith subsequently withdrew the plea and was appointed new counsel.

Keith's trial counsel objected at sentencing to the introduction of six prior felony convictions because he said that he did not have notice of them. After discussing the issue with trial counsel, Keith agreed to go forward with sentencing that day. Assuming that it was error to proceed with sentencing without prior notice of the earlier convictions, Keith acquiesced in the error. A party cannot acquiesce to an error and then assert it on appeal.[34]

(h) Keith claims that trial counsel should have renewed a previously-filed motion for continuance at the time of trial. Trial counsel testified that he had approximately five weeks to prepare for trial and that he thought that was sufficient. He testified that he had dedicated a lot of time to the case and was ready to try it on the scheduled trial date. Keith has failed to show deficient performance or prejudice with respect to this claim.

---

[33] Court of Appeals Rule 25 (c) (3) (i); *Mann v. State*, 244 Ga. App. 756, 761 (9) (536 SE2d 608) (2000).

[34] *Price v. State*, 237 Ga. App. 54, 55-56 (2) (513 SE2d 40) (1999).

7. At the motion for new trial hearing, Keith argued pro se that the arrest warrant was invalid because it was signed by a magistrate who was later removed from office for misconduct and that therefore any subsequent proceedings were invalid.

The magistrate was removed from office for failing to disclose that he had prior military convictions that would have been felonies under Georgia law.[35] However, his acts while in office are considered valid as the acts of an officer de facto.[36] And the acts of a de facto officer cannot be collaterally attacked and set aside.[37] Thus, the arrest warrant and the subsequent proceedings were not null and void.[38]

*Judgment affirmed. Ruffin, C. J., and Smith, P. J., concur.*

DECIDED MAY 18, 2006 —
RECONSIDERATION DENIED JUNE 16, 2006 — 

*Flint & Connolly, John F. Connolly*, for appellant.

*Garry T. Moss, District Attorney, Lara A. Snow, Assistant District Attorney*, for appellee.

---

[35] See *In the Matter of Inquiry Concerning Judge Robertson*, 277 Ga. 831, 833 (1), 834 (3) (596 SE2d 2) (2004).

[36] OCGA § 45-2-1.

[37] *Freeman v. State*, 172 Ga. App. 168, 169 (1) (322 SE2d 289) (1984).

[38] See id.