**FOURTH DIVISION
DILLARD, C. J.,
DOYLE, P. J., and MERCIER, J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules**

**June 13, 2018**

# In the Court of Appeals of Georgia

A18A0118. GATES et al. v. TAYLOR COUNTY SCHOOL DO-004 DISTRICT et al.

DOYLE, Presiding Judge.

Brenda Gates and 283 other plaintiffs sued the Taylor County School District; Superintendent Jennifer Albritton; and current or former Taylor County Board of Education ("School Board") members Mary Bentley, Ronald Harris, Eloise Doty, Rufus Green II, and Joseph Patterson. The plaintiffs challenged the voting authority of Green and certain resulting acts undertaken by the School Board, and they sought injunctive and other equitable relief. Following a dismissal on the pleadings, the plaintiffs appeal, contending that the trial court erred by concluding that the officer de facto doctrine defeats their challenge to the School Board's actions. Because the

trial court properly ruled that Green was acting as an officer de facto when he cast the votes at issue, we affirm.

"We review a grant or denial of a motion to dismiss to determine whether the allegations of the complaint, when construed in the light most favorable to the plaintiff[s], and with all doubts resolved in the plaintiffs['] favor, disclose with certainty that the plaintiff[s] would not be entitled to relief under any state of provable facts."[1] When, as here, the defendants have moved for a judgment on the pleadings, "[w]e may also consider any exhibits attached to and incorporated into the complaint and the answer, also construing them in the [plaintiffs'] favor."[2] "A trial court's ruling on a motion to dismiss is subject to de novo review on appeal."[3]

The complaint alleges that Green was a member of the School Board in November 2013, when the School Board voted to hire Gary Gibson as superintendent of the School District, entering into a contract for a three-year term in December

---

[1] (Punctuation omitted.) *Penny v. McBride*, 282 Ga. App. 590 (639 SE2d 561) (2006).

[2] (Punctuation omitted.) *Shelnutt v. Mayor & Aldermen of City of Savannah*, 333 Ga. App. 446 (776 SE2d 650) (2015). See also OCGA § 9-11-10 (c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes.").

[3] (Punctuation omitted.) *Penny*, 282 Ga. App. at 590.

2013. In March 2015, the School Board voted to employ Green's daughter-in-law, Shonda Green, as a middle school principal in the School District. In September 2016, while Rufus Green was still acting as a member, the School Board voted to terminate Gibson's contract early, effective September 20, 2016. In November 2016, the School Board executed a contract with Albritton, employing her to serve a three-year term as superintendent.

Green voted in favor of terminating Gibson's contract and hiring Albritton. The plaintiffs sought to challenge these acts and filed a petition for a writ of mandamus, declaratory judgment, injunctive relief, and for leave to file a writ of quo warranto. They argued that Green's challenged votes were unauthorized because they occurred after Green's daughter-in-law was hired as a principal in the School District, citing an anti-nepotism clause in OCGA § 20-2-51 (c) (4) (A). That Code subsection provides:

> No person who has an immediate family member sitting on a local board of education *or serving as the local school superintendent or as a principal*, assistant principal, or system administrative staff in the local school system shall be eligible to serve as a member of such local board of education. As used in this paragraph, the term "immediate family

member" means a spouse, child, sibling, or parent or *the spouse of a child. . . .*[4]

The defendants filed a motion to dismiss or for judgment on the pleadings on the ground that Green was acting as an officer de facto during the votes in question. Following briefing and argument, the trial court granted the motion, giving rise to this appeal.

The plaintiffs contend that the trial court erred (1) by applying the officer de facto doctrine on the pleadings without further factual development, (2) because Green vacated his office as a matter of law, and (3) by applying the officer de facto doctrine to Albritton. We disagree.

1. *Application of the officer de facto doctrine to Green based on the facts pleaded by the plaintiffs without further factual development.* We begin with the general rule established by the officer de facto doctrine. "It is well settled in Georgia that, although a person may be absolutely ineligible to hold any civil office whatever in this state, yet his official acts, while holding a commission as a public officer, are

_____

[4] (Emphasis supplied.)

4

valid as the acts of an officer de facto."[5] The official acts of such an office holder "are recognized as valid on grounds of public policy, and for the protection of those having official business to transact."[6]

> The principle on which the whole doctrine . . . rests, is not how [officers] happen to act de facto, — whether the cause be an illegal appointment or election, or an illegal holding over, but [instead] it is the convenience of the public — the necessity of the thing — the impossibility of one always knowing when an officer to whom he goes on business of a ministerial character is legally in office, was properly elected or has held too long.[7]

Thus, Georgia's courts long "have held that the fact that a person is ineligible to hold a particular office, or has failed to take an oath, does not prevent that person from being an officer de facto, and while de facto in such office, competent to act therein."[8]

---

[5] (Punctuation omitted.) *Health Facility Investments, Inc. v. Ga. Dept. of Human Resources*, 238 Ga. 383, 384 (233 SE2d 351) (1977).

[6] (Punctuation omitted.) *Tarpley v. Carr*, 204 Ga. 721, 728 (1) (51 SE2d 638) (1949), quoting *Norton v. Shelby County*, 118 U.S. 425, 445 (6 SCt 1121, 30 LEd 178) (1886).

[7] *Smith & Bondurant v. Meador*, 74 Ga. 416, 419 (1885).

[8] *Freeman v. State*, 172 Ga. App. 168 (1) (322 SE2d 289) (1984) (collecting cases).

Here, the plaintiffs argue that the trial court prematurely applied the doctrine on the face of the pleadings because more factual development is necessary to decide whether the doctrine should be applied in this particular case. Specifically, they argue that the trial court should have considered whether Green acted "in good faith" and whether public policy weighs against application of the doctrine in this case. But all of the precedent regarding good faith cited by the plaintiffs merely references good faith in dicta explaining the public policy interests served by the de facto officer doctrine.[9] There is nothing about the scenario in this case that removes the normal policy considerations favoring the doctrine,[10] and none of the cases cited by the plaintiffs articulate a fact-based test based on the particular evidence in the case. Further, other Georgia cases have applied the doctrine without further factual

---

[9] See, e.g., *Smith & Bondurant*, 74 Ga. at 418 ("But suppose [an officer] was not de jure a public officer, was he not de facto such, and his acts good, when done in good faith by him for any of the public also acting in good faith? We think so most clearly.")

[10] See generally *Godbee v. State*, 141 Ga. 515, 519 (81 SE 876) (1914) (The officer de facto doctrine is "supported . . . [o]n grounds of public policy, because it would be against the interest of the community to allow the acts of de facto officers to be collaterally impeached, by drawing into question the official title of such officers[; and o]n grounds of justice, because to judge a man unheard and without an opportunity to defend himself would be contrary to natural equity.").

development and without explicit reference to the "good faith" of the acting officer.[11] There is no allegation or implication of bad faith in this case, and in light of current precedent, we discern no error by the trial court in ruling on the defendants' motion on the pleadings.

The plaintiffs also argue that because the officer de facto doctrine would not extend to Green if his original commission was fatally flawed ab initio, further factual development is required. But this exception only applies if the officer's original commission is facially void and, upon examination, "fades away without exposure to anything extrinsic to itself."[12] Here, by contrast, the plaintiffs' complaint alleges that Green was an "acting member" of the School Board, and his "term of office began in January 2013." The only defect alleged by the plaintiffs in the complaint or argued on appeal is the appointment of his daughter-in-law as a principal in the School District — an event that took place after his official commission.[13] The plaintiffs do

---

[11] See, e.g., *McLendon v. State*, 259 Ga. 778, 779 (2) (387 SE2d 133) (1990); *Hagood v. Hamrick*, 223 Ga. 600, 602 (3) (157 SE2d 429) (1967) (sustaining general demurrer); *Keith v. State*, 279 Ga. App. 819, 828 (7) (632 SE2d 669) (2006).

[12] *Parrish v. Adel*, 144 Ga. 242, 244 (86 SE 1095) (1915), quoting *Hawkins v. Intendant of Jonesboro*, 63 Ga. 527, 529 (1879).

[13] The plaintiffs do not dispute this, arguing in their appellate brief that Green "was ineligible to serve as a member of the [School] Board as of March 12, 2015, the

7

not challenge Green's original commission; they only argue that he vacated his office as a matter of law when the anti-nepotism clause in OCGA § 20-2-51 (c) (4) (A) was violated. Thus, as alleged in the complaint and argued on appeal, there is no issue presented with respect to Green's original commission, nor any defect in his status as an office holder that would be apparent on the face of his commission to that office. Accordingly, even assuming as true the undisputed facts pleaded by the plaintiffs, the plaintiffs' suit was properly resolved on the pleadings.[14]

2. *Vacating office as a matter of law*. The plaintiffs argue that Green vacated his office as a matter of law because he became ineligible to serve on the date his daughter-in-law was hired as a principal in the School District. As noted above, they rely on OCGA § 20-2-51 (c) (4) (A), which provides that any person who has an immediate family member, including a spouse of a child, serving as a principal "shall be ineligible to serve as a member of" the local board of education. Based on this, the

date the Board hired his daughter-in-law as principal. . . ." Cf. *Keith*, 279 Ga. App. at 828 (7) (holding that a magistrate's official actions were valid until he was later removed from office for misconduct).

[14] See, e.g., *Hagood*, 223 Ga. at 602 (3) (sustaining a general demurrer on the ground that "[a]lthough a county board of education may consist in part of persons who are not legally qualified to hold the office as members, they are de facto in office and competent to act until ejected"); *Varnadoe v. Housing Auth. of Doerun*, 221 Ga. 467, 471 (7) (145 SE2d 493) (1965) (same).

plaintiffs argue that Green's alleged ineligibility resulted in him vacating the office as a matter of law upon his ineligibility pursuant to OCGA § 45-5-1 (a) (4), which provides: "All offices in the state shall be vacated: . . . [b]y voluntary act or misfortune of the incumbent whereby he is placed in any of the specified conditions of ineligibility to office." The plaintiffs then argue that this vacancy was effective immediately upon Green's ineligibility under the accompanying subsection, OCGA § 45-5-1 (b), which states:

> Upon the occurrence of a vacancy in any office in the state, the officer or body authorized to fill the vacancy or call for an election to fill the vacancy shall do so *without the necessity of a judicial determination of the occurrence of the vacancy*. Before doing so, however, the officer or body shall give at least ten days' notice to the person whose office has become vacant, except that such notice shall not be required in the case of a vacancy caused by death, final conviction of a felony, or written resignation. The decision of the officer or body to fill the vacancy or call an election to fill the vacancy shall be subject to an appeal to the superior court; and nothing in this subsection shall affect any right of any person to seek a judicial determination of the eligibility of any person holding office in the state. The provisions of this subsection shall apply both to vacancies occurring under this Code section and to vacancies occurring under other laws of this state.[15]

---

[15] (Emphasis supplied.)

Based on this subsection, the plaintiffs argue that Green vacated his office on the date his daughter-in-law was hired, and this vacancy was effective "without the necessity of a judicial determination of the occurrence of the vacancy."[16]

Nevertheless, giving the statutory text its plain and ordinary meaning,[17] the emphasized language in OCGA § 45-5-1 (b) merely addresses the authority of the School Board to fill the vacancy or call for an election after giving ten days notice to the vacating officer. This Code section clarifies that the School Board did not need to obtain a judicial determination before doing so. Even so, the plaintiffs have not alleged that the Board took any action to fill Green's seat; instead, the complaint reveals that Green simply continued to act as an officeholder without interruption. This scenario fits squarely within the officer de facto doctrine.

Further, putting aside the absence of any allegation that such notice was given or election called for, nothing in this subsection addresses the validity of the acts subsequently taken by a holdover officer such as Green. For example, in contrast to

---

[16] (Emphasis supplied.) OCGA § 45-5-1 (b).

[17] See generally *Deal v. Coleman*, 294 Ga. 170, 172-173 (1) (a) (751 SE2d 337) (2013) ("[W]e must afford the statutory text its 'plain and ordinary meaning,' we must view the statutory text in the context in which it appears, and we must read the statutory text in its most natural and reasonable way, as an ordinary speaker of the English language would.") (citations omitted).

OCGA § 45-5-1, the very next Code section, OCGA § 45-5-2, states that "[u]pon final conviction of a felony, the office of any state officer shall be vacated immediately without further action." This explicit language — "shall be vacated immediately without further action" — does not appear in OCGA § 45-5-1. Absent some action taken by Green or the School Board manifesting his removal, Green's actions while holding office were valid under the officer de facto doctrine.

Thus, this argument has the same effect of taking as true the allegation that Green was ineligible to hold his office. It does not create an end run around the officer de facto doctrine because the whole purpose of the doctrine is to address what happens when an officer acting under color of law is nevertheless without authority to take official action: "All that is required when there is an office to make an officer de facto, is that the individual claiming the office is in possession of it, performing its duties and claiming to be such officer under color of an election or appointment, as the case may be."[18] This is true "whether the cause be an illegal appointment or election, or [as alleged in this case] an illegal holding over."[19]

---

[18] *Tarpley v. Carr*, 204 Ga. 721, 728 (1) (51 SE2d 638) (1949).

[19] *Smith & Bondurant*, 74 Ga. at 419.

11

The same result is embraced by the statutory version of the officer de facto doctrine codified at OCGA § 45-2-1, which does not directly control Green's case, but reflects the policy behind the doctrine applied here. That Code section enumerates certain categories of "persons ineligible to hold any civil office," such as persons of unsound mind or persons who are constitutionally disqualified, but nevertheless states that the acts of these people, "while holding a commission, shall be valid as the acts of an officer de facto," despite their ineligibility to hold office.[20] Thus, Georgia law explicitly contemplates that a person may be ineligible to hold office but still validly act under color of law while holding a commission. The plaintiffs' challenge to Green's votes results in the same conclusion.

3. *Applying the officer de facto doctrine to Albritton*. Finally, the plaintiffs also argue that the trial court erred by holding that Albritton is an officer de facto. As an initial matter, the trial court held that "Green's vote [appointing Albritton] was valid as the action of an officer de facto." For the reasons stated above, this was a correct application of the officer de facto doctrine to Green. With respect to Albritton herself, the plaintiffs rely on cases that address appointments that were made without the

---

[20] OCGA § 45-2-1.

12

color of law and that were void on their face,[21] arguing that Albritton's acts are therefore not valid. But this is not such a case: Albritton's office was duly constituted, and her appointment made according to the normal process — a School Board vote — for filling her office.[22] Thus, nothing on the face of her appointment reveals a fatal defect, and this argument presents no basis for reversal.

*Judgment affirmed. Dillard, C. J., and Mercier, J., concur.*

---

[21] See, e.g., *Hawkins*, 63 Ga. at 529; *Parrish*, 144 Ga. at 245 (1915) ("One who intrudes upon an office and assumes to exercise its functions, without even the legal title or color of right to do it, is not a de facto officer, and his acts are entirely void.").

[22] Compare *Hawkins*, 63 Ga. at 529 ("[T]hat [the officer] was ineligible, appears upon the very resolution by which he was appointed.").